COMMONWEALTH *vs.* WILLARD M. LINDSEY.
SAME *vs.* SAME.

Worcester.    October 4, 1915. — March 8, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Physicians and Surgeons.    Clairvoyant.    Evidence,* Of intent.

At the trial of a complaint under R. L. c. 76, § 8, for practicing medicine without being lawfully authorized and registered, where the defendant assumed to be a clairvoyant and also contended that he merely sold medicines as the agent of two corporations, it is proper for the presiding judge to instruct the jury that, if the defendant was a clairvoyant and as such came within the exception contained in § 9 of the same chapter, he lawfully could not prescribe medicine for the cure of disease, even if the diagnosis of the disease and the kind of medicine prescribed were revealed to him through clairvoyance, and to leave it to the jury to say whether in selling the medicines the defendant was acting entirely as the agent of the corporations or was engaged in the practice of medicine.

At the trial of complaints under R. L. c. 76, § 8, for practicing medicine without lawfully being authorized and registered on the two days named in the respective complaints, where the defendant contends that on the days named he merely was selling medicines as the agent of certain corporations, the Commonwealth, for the purpose of showing the defendant's intent by his behavior in the course of his business, may introduce evidence of sales of medicines by him on days other than the days named in the complaints when his conduct tended to show that he was prescribing the medicines that he sold.

TWO COMPLAINTS, received and sworn to in the Central District Court of Worcester on December 21, 1914, charging that the defendant at Worcester respectively on November 24, 1914, and

November 30, 1914, unlawfully did practice medicine, not being lawfully authorized and registered as required by law.

In the Superior Court the cases were tried together before *Sanderson, J.* The evidence is described in the opinion. It was agreed that the defendant never had been lawfully registered as required by law to practice medicine.

At the close of the evidence the defendant asked the judge to make the following rulings:

"1. There is no evidence from which the jury can find that the defendant practiced medicine as alleged in either of the complaints against him.

"2. If the people who consulted the defendant believed him to be a clairvoyant and the defendant purported to treat them by that method of treatment or if he purported to ascertain their physical condition by means of clairvoyance, it is not important for the jury to decide what constitutes clairvoyance."

The judge refused to make the first ruling requested, and, as to the second ruling requested, refused to make it in its exact language and instructed the jury as follows:

"The defendant has told you how he does his business; about the corporations; what he does or does not do in regard to magnetic healing and in regard to selling medicines. You will recall all the evidence in the case. I have simply referred to some of it, but you should remember that the question in the case is whether — rather did the defendant, whether a clairvoyant, or not, for the cure, prevention or alleviation of any pain, disease or ailment of those seeking treatment from him prescribe or direct any drug or medicine with the expectation of receiving compensation therefor.

"If he did and you are satisfied of that beyond a reasonable doubt, you will find him guilty; otherwise, not guilty."

The judge then read to the jury the second ruling requested, and said, "If he confined himself to that, he is within the protection of the exception to the statute."

The judge also instructed the jury as follows: "In the first place, I want to call your attention to the fact that you have heard some testimony as to what was going on in the defendant's office and what was said and done by him on other dates before the thirtieth of November. I think one witness testified to a conversation when she began her treatment with him as early as April of that

year — of last year — and some other witness testified to what happened back in September or August, or some other month. You will recall about that. The testimony as to those previous events is not testimony on which you would be justified in convicting the defendant for anything he did on those dates. It is put in for the sole purpose of aiding you in deciding, so far as it does aid you, as to what the defendant was doing on the dates in question, namely, on the twenty-fourth day of November and on the thirtieth day of November. Unless it assists you in determining whether the things you find he was doing on those dates were practicing medicine unlawfully, as charged in the complaint, you ought entirely to disregard everything you have heard as to previous dates. If it does throw light on the facts disclosed on this date, then you can use it so far as it aids you in the matter, but you should not for any other purpose."

Later in his charge the judge said: "Now, as I understand it, the other witnesses, outside of the defendant, who has told his story, have told about things that have happened on other dates, and you understand that that is of no importance unless they help you to interpret what happened on these two days."

The jury found the defendant guilty in both cases, and the judge imposed a fine of $300 in each case. The defendant alleged exceptions to the refusal of the rulings requested by him and to the portion of the charge which instructed the jury that they might consider the evidence as to what the defendant did on days other than November 24 and November 30.

The material portions of R. L. c. 76, §§ 8, 9, are as follows:

"Section 8. Whoever, not being lawfully authorized to practice medicine within this Commonwealth and registered as aforesaid, holds himself out as a practitioner of medicine, or practices or attempts to practice medicine in any of its branches, . . . shall, for each offence, be punished by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment for three months, or by both such fine and imprisonment. . . .

"Section 9. The provisions of the eight preceding sections . . . shall not apply to . . . osteopathists, pharmacists, clairvoyants, or persons practicing hypnotism, magnetic healing, mind cure, massage, Christian science or cosmopathic method of healing, if they do not violate any of the provisions of section eight."

The cases were submitted on briefs at the sitting of the court in October, 1915, and afterwards were submitted on briefs to all the justices.

*J. W. Ramsey & S. R. Cutler,* for the defendant.

*J. A. Stiles,* District Attorney, *& E. T. Esty,* Assistant District Attorney, for the Commonwealth.

CARROLL, J. These two complaints are for the violation of R. L. c. 76, § 8. They each allege that the defendant, on November 24, 1914, and November 30, 1914, unlawfully did practice medicine, not being lawfully authorized and registered as required by law.

1. Near the street door of the building, in which the defendant carried on his business, was the sign, "Dr. Willard M. Lindsey, Inc." This was the name of a corporation of which he was the president. He also was the president of another corporation, "The Magnetic Sanitarium Company."

Three women testified as witnesses for the Commonwealth. Each called at the defendant's office on two or more occasions. He did not permit any of them to tell him her symptoms. On each occasion he stated to them their ailments; to one of the witnesses he said, "Do not tell me what ails you. I will tell you myself. Don't tell me a thing." On the first visit each of the witnesses paid him $2.75, receiving a bottle of medicine on which were directions, the defendant saying to one of the women, "One dollar [is] for the office call and $1.75 for the medicine." On all other visits the witnesses paid $1.75 and received a bottle of medicine.

One of the witnesses testified that, on one occasion she told the defendant her brother was sick. The defendant said he could help him, and she "got a bottle of medicine for her brother and paid $2.75 for the same." The brother also was a witness for the Commonwealth. He testified that after his sister's visit to the defendant he called on him and was told to "bathe himself with witch hazel;" and "that he could get it at a grocery store." Nothing was paid by him to the defendant.

James T. Davidson, an inspector of the Worcester police, testified that on November 24, 1914, while in "a small alleyway leading to a freight elevator," from which there was a door to the defendant's office over which was a transom, he heard the defend-

ant say: "You are the next. Step in this way. You see these?" as if the defendant lifted something; he then heard a noise of "something falling as if into a tray or receptacle of some kind."

The defendant was the only witness in his own behalf. He said that the things described by inspector Davidson were "taken from the bodies of different people, they were cancers, tumors . . . gall stones and gravel stones which the medicine had taken out of people through the power which he possessed." He claimed to be a clairvoyant and magnetic healer. "People came in and sat down; that he looked at them and told them everything that had happened to them from childhood to the grave, which he had power to do, that is born in his body." On cross-examination he testified that "in selling medicine he was acting as president for the Magnetic Sanitarium Company or the Dr. Willard M. Lindsey, Inc. . . . that he charged $2.75 for the first bottle because the first bottle of medicine cost him more than the rest to manufacture." He also said "that he had twenty-five or thirty different kinds of medicine, all of which were patented by him; that he determined what medicine . . . to give to a person by his judgment reached through clairvoyancy."

There was additional evidence, introduced by the Commonwealth, tending to prove the defendant's guilt. From this brief recital of the testimony it clearly appears to have been for the jury to decide the question, Was the defendant violating the statute by unlawfully practicing medicine?

1. There was no error in refusing the first request. If the defendant was a clairvoyant and as such came within the exception of the statute, he could not prescribe medicine for the cure of disease, even if the diagnosis of it and the kind of medicines prescribed were revealed to him through clairvoyance. *Commonwealth* v. *DeLon*, 219 Mass. 217. It was plainly for the jury to say whether in the sale of the medicines he was acting entirely as the agent of the corporations, or was engaged at the time in the practice of medicine.

2. The defendant's second request was not given in its exact language. The defendant's guilt or innocence was to be determined by what he actually did. It was not to be determined by what he purported to do. This request was properly refused. *Commonwealth* v. *Zimmerman*, 221 Mass. 184.     .

3. The Commonwealth elected to rely on November 24 and November 30, 1914, respectively, as the days upon which the offences were committed. Against the defendant's exception, the Commonwealth was permitted to introduce evidence of the defendant's acts and conversations on different days between April, 1913, and November, 1914.

While it is a well established rule of law, in the trial of a criminal case, that the Commonwealth is not allowed to introduce evidence of other crimes with the purpose of showing the defendant to be guilty of the offence charged, it is equally well established that evidence of other crimes and acts is admissible when they are a part of a common purpose, where the plan or scheme of the defendant is a material circumstance and when the course of the defendant's business is a matter of importance in passing on his guilt or innocence.

Where the several visits and consultations of a patient with one from whom she is receiving medicines are but parts of the same course of treatment, where the speech or conduct of the defendant on one of the occasions may be equivocal, and it is essential to determine the dominant purpose of the defendant on the day of the offence, then the conduct of the defendant on other days, and as a part of the same transaction, may be a matter of great importance, and therefore of probative value. *Commonwealth* v. *Dow,* 217 Mass. 473. *Commonwealth* v. *Robinson,* 146 Mass. 571. *Commonwealth* v. *Ferry,* 146 Mass. 203. *Commonwealth* v. *Jackson,* 132 Mass. 16. *Commonwealth* v. *Scott,* 123 Mass. 222. *Commonwealth* v. *Choate,* 105 Mass. 451. *State* v. *Shaw,* 58 N. H. 73. *Ferner* v. *State,* 151 Ind. 247.

The defendant contended that in delivering the medicine to the various witnesses he was acting, not as a practitioner of medicine, but as an agent or salesman for the Dr. Willard M. Lindsey, Inc., or The Magnetic Sanitarium Company. Assuming, as the defendant contends, that he could sell and deliver drugs and medicines without violating the particular statute we are now considering, the Commonwealth had a right to meet this defence by showing the plan and purpose of the defendant, as well as his method of business, in order that the jury might determine whether on November 24 and November 30, he was acting in the capacity of a salesman or as a physician. As sales of liquor at other times than

that alleged have been held admissible as showing the intent with which the specified liquors have been kept, so the intent with which the defendant disposed of his medicines on the days in question, whether as sales of goods to customers or as medicines prescribed by himself, might be shown by his conduct respecting people and medicines in his office on other occasions.

In a complaint for an unlawful sale of intoxicating liquors, evidence of other sales than the one relied on has been held admissible on the ground that "proof of such sales might aid in showing that the transaction relied on by the prosecution was a sale, by proving the business then and there conducted." *Commonwealth* v. *Sinclair*, 138 Mass. 493. The judge very carefully and accurately instructed the jury that the defendant could not be convicted for what he had done on any date except the ones relied on by the Commonwealth, and that the occurrences on these and other dates were in evidence solely for the purpose of aiding them in deciding what the defendant was doing on November 24 and November 30, 1914. A majority of the court think the exception to the charge of the judge, and the exception to the admission of evidence of what happened on other days than those relied on, must be overruled.

*Exceptions overruled.*