COMMONWEALTH *vs.* ANTHONY HOUTENBRINK.

Suffolk.    March 4, 1920. — March 29, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Optometry. Medicine. Physicians and Surgeons. Constitutional Law,* Police power.

St. 1912, c. 700, regulating the practice of optometry, is a valid exercise of the police power and violates no provision either of the State or of the Federal Constitution.

One, who, without being authorized or registered as a practitioner of medicine under the provisions of R. L. c. 76, § 8, held himself out as a "Doctor of Ophthalmology," printing after those words, following his name on his billheads, the words, "(McCormick Medical College, Chicago)," and "Nervous Systems Measured and Analyzed. Glasses Fitted for Eye Defects," and who first examined eyes through an instrument called the ophthalmoscope, next placed a try-frame on the nose of the patient in which were inserted successively various lenses, and then fitted glasses for the patient, may be found to be holding himself out as a practitioner of medicine contrary to the provisions of the statute.

COMPLAINT, received and sworn to in the Municipal Court of the City of Boston on October 22, 1919, charging the defendant with practising optometry without being lawfully authorized to do so or registered with the board of registration in optometry; also a

COMPLAINT, received and sworn to in the same court on October 25, 1919, charging the defendant with holding himself out as a practitioner of medicine without being lawfully authorized to practise medicine or duly registered with the board of registration in medicine.

On appeal to the Superior Court, the complaints with the defendant's consent were tried together. The material evidence is described in the opinion.

At the close of the evidence, the defendant asked for the following rulings in the first case:

"1. That the acts complained of are not subject to legislative regulation, because the defendant did not operate on nor prescribe for any physical ailment or any physical injury or deformity of another.

"2. That the acts complained of do not constitute an offence, for the reason that St. 1912, c. 700, on which said complaint is based, is unconstitutional and contrary to arts. 6 and 7 of the Declaration of Rights and contrary to the Fourteenth Amendment to the Constitution of the United States."

The rulings were refused.

As to the second complaint, the defendant requested the following rulings:

"1. That on all the evidence, the defendant cannot be said to have held himself out as a practitioner of medicine.

"2. That although the defendant had a sign on the door of the room occupied by him as an office reading 'Doctor of Ophthalmology' from that he cannot be said to have. held himself out as a practitioner of medicine."

These rulings also were refused. The jury found the defendant guilty on both counts; and the defendant alleged exceptions.

*A. E. Reimer*, for the defendant, submitted a brief.

*H. P. Fielding*, Assistant District Attorney, for the Commonwealth.

RUGG, C. J. The defendant was convicted on two complaints, one charging the practice of optometry, the other of medicine,

without registration and certification as required by the statutes. Confessedly he was not registered nor certified so as to be authorized in accordance with the form of the statute to practise optometry or medicine.

There was evidence tending to show that the defendant held himself out as "Doctor of Ophthalmology," as examining the eyes of persons who resorted to him for that purpose, that he used an instrument called the ophthalmoscope, through which he looked at the eye, placed a try-frame on the nose of the patient in which were inserted successively various lenses, and then fitted glasses, and that he was skilled in the mechanical art of lens making. The defendant in his testimony explained the construction and purposes of an ophthalmoscope and his system of correcting vision by the use of lenses inserted in a try-frame adjusted to the patient's eyes and making up glasses from the lenses which the patient decided he could see through, and said that he had applied this method to about two hundred persons within two years of practice. On the defendant's billheads after his name were printed these among other words: "Doctor of Ophthalmology (McCormick Medical College, Chicago)," "Nervous Systems Measured and Analyzed. Glasses Fitted for Eye Defects." The defendant defined an ophthalmologist as one who had "a knowledge of physical optics, the physiology and anatomy of the eye." Other definitions were given in testimony as follows: "Ophthalmology is that science which deals with the treatment of conditions of the eye," including both optometrist and oculist. "An oculist and ophthalmologist are practically synonymous terms . . . the distinction between the optometrist and ophthalmologist or oculist is that the optometrist's work is simply mechanical and his field of correcting vision is limited to cases where said correction can be made with the aid of mechanical instruments only." Another witness testified that an optometrist had a knowledge of "theoretic as well as practical optics, a knowledge of the construction of the human eye and its nerve supply," and that an ophthalmologist "deals with the condition of the eye, more particularly as to diseased conditions, as well as practising optometry."

The defendant does not contend that he has not violated the terms of St. 1912, c. 700, which purports to regulate the practice

of optometry, but that that subject is beyond the power of legislative control and that the statute violates the Constitution both of the United States and of the Commonwealth. That statute provides in § 1 that "The practice of optometry is defined to be the employment of any method or means other than the use of drugs for the measurement of the powers of vision and the adaptation of lenses for the aid thereof." Sections 2, 3, 4 and 7 relate to the appointment, meetings, records, reports and compensation of a board of registration in optometry. By § 5 provision is made for examination, certification and registration of practitioners in optometry, and by § 8 for the revocation of such certification for designated causes. Every such practitioner is required by § 6 to display conspicuously his certificate in his place of business and to deliver to customers served away from his place of business certain identifying information. Physicians and surgeons lawfully entitled to practise medicine and persons who merely sell spectacles, eyeglasses and lenses on prescription or as merchandise, without practising optometry, are exempted from the scope of the act by § 10. A penalty is imposed by § 9 for practising, holding himself out as practising or attempting to practise optometry contrary to the terms of the statute.

It is too well settled to require extended discussion that whatever rationally tends to the promotion and preservation of the public health is within the police power of the State. One means to this end is the examination and certification by a public board of those who profess to treat physical or mental ailments or to cure disease, or who hold themselves out as possessing unusual skill in assuaging any of the ills of the flesh or overcoming defects or deficiencies of any of the main organs of the body. The public thus are protected from being imposed upon by the ignorant or misled by the specious but unqualified.

It has been held in numerous cases that the practice of medicine is subject to reasonable public regulation by the several States under the police power without offending any provision of the Federal Constitution. *Dent* v. *West Virginia,* 129 U. S. 114. *Hawker* v. *New York,* 170 U. S. 189. *Reetz* v. *Michigan,* 188 U. S. 505. *Watson* v. *Maryland,* 218 U. S. 173. It has been decided in this Commonwealth that such a statute violates no provision of our Constitution. *Commonwealth* v. *Jewelle,* 199 Mass.

558. It has been held, also, that the power of regulation extends to and includes osteopaths, *Collins* v. *Texas*, 223 U. S. 288, dentists, *People* v. *Griswold*, 213 N. Y. 92, and bone setters, *Hewitt* v. *Charier*, 16 Pick. 353.

The kind of work undertaken by the defendant and described in said c. 700 bears such intimate relation to the health of mankind as to bring it within the power of legislative supervision through the exercise of the police power. Vision is essential to the highest usefulness of the individual. The eye is proverbially a delicate organ. It is closely connected with intellectual, nervous and physical functions. Advice as to its care and prescribing for the correction of its defects by tests and examinations without the use of drugs is closely connected with health. The reasons which have led courts generally to uphold statutes regulating the examination, qualifications and registration of physicians and surgeons against attacks based on alleged inequality of the laws, class legislation, interference with natural rights, and the constitutional liberty of the citizen to earn his living in any lawful calling or to pursue his chosen avocation, are equally applicable to the statute here assailed and equally decisive in sustaining its validity and need not be further amplified.

In *McNaughton* v. *Johnson*, 242 U. S. 344, a statute of California forbidding the practice of optometry without first having obtained a certificate from a public board was upheld as within the police power of the State and as not violating any constitutional right of the individual theretofore practising optometry without a certificate. The definition of optometry in the California statute in its constitutional aspects differs in no material particular from the definition in § 1 of the statute here assailed. That case was disposed of rather briefly by the court as being comprehended within the principles declared in the decisions already cited which upheld statutes regulating the practice of medicine. To the same effect is *Price* v. *State*, 168 Wis. 603. We are unable to follow the decision to the contrary in *People* v. *Griffith*, 280 Ill. 18.

There was sufficient evidence to warrant a finding that the defendant held himself out as a practitioner of medicine contrary to R. L. c. 76, § 8. The use of the words "Doctor of Ophthalmology" on his sign and billheads bears some indication of hold-

ing himself out as a practitioner of medicine. The assertion that he was a graduate of a medical college and was capable of fitting glasses for eye defects, and was able to measure and analyze the nervous system, were representations to the same general effect. The examination of the eye, as already described, shows that as to the eye he acted with every appearance of pretence to special skill in the highly important special branch of medical science relating to the eye. It has been held that the practice of midwifery, *Commonwealth* v. *Porn,* 196 Mass. 326, of chiropractic, *Commonwealth* v. *Zimmerman,* 221 Mass. 184, the prescribing of medicine in accordance with revelations made by "occult force" while in a trance, *Commonwealth* v. *DeLon,* 219 Mass. 217, or a "judgment reached through clairvoyancy," *Commonwealth* v. *Lindsey,* 223 Mass. 392, are included within the general description of practice of medicine. In *Commonwealth* v. *Jewelle,* 199 Mass. 558, it was said that there might be a practice of medicine without the dealing out of drugs or prescribing drugs or other substances to be used as medicine. The evidence brings the case at bar well within the authority of these decisions. The rulings requested were rightly refused.

*Exceptions overruled.*