## COMMONWEALTH *vs.* HENRY J. DRAGON.
### SAME *vs.* SAME.

Hampshire.    September 21, 1921. — October 11, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Physicians and Surgeons. License. Bone-setter. Words,* "Practitioner of medicine," "Practice of medicine."

The words, "practitioner of medicine" and "practice of medicine in any of its branches," as used in R. L. c. 76, § 8 (see now G. L. c. 112, § 6), include the practitioner and the practice of surgery.

At the trial of complaints charging that the defendant, not being authorized and registered to practise medicine within the Commonwealth, did practise medicine and held himself out as a practitioner of medicine, there was evidence tending to prove that the defendant had been engaged in business for twenty-five years, had offices in Salem, Worcester and Chicopee and also visited Ware, where he used a room in a local inn as an office; that on a visit to Ware he saw a man whose leg had been broken and who had been treated by a local physi-. cian, removed bandages which had been placed around the leg, examined the leg, set it, in so doing using an external application of the consistency of cream, cotton, splints, cloth bandages and adhesive "tape plaster," told the man that after a rest of forty days he would be all right, at his request examined his ankle and knee cap and pronounced them out of joint and purported to remedy them, and left the man a bottle of the substance which had been applied to his leg, stating to him that he could let him "have some more" of it on a visit two weeks later; that there was a second visit; that the defendant was

paid $35 for his services at the first visit and $5 for those at the second. *Held,* that the evidence warranted convictions on both complaints.

Two COMPLAINTS, received and sworn to in the District Court of Eastern Hampshire on May 6, 1920, respectively charging that the defendant, not being duly authorized and registered to practise medicine within the Commonwealth, did practise medicine and did hold himself out as a practitioner of medicine.

On appeal to the Superior Court, the complaints were tried together before *Keating,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked that verdicts of not guilty be ordered. The request was refused, and the defendant was found guilty on both complaints, and alleged exceptions.

The cases were submitted on briefs.

*E. J. Carney & J. H. Schoonmaker,* for the defendant.

*T. J. Hammond,* District Attorney, for the Commonwealth.

JENNEY, J. The defendant on separate complaints was found guilty of holding himself out as a practitioner of medicine, and of practising medicine without being lawfully authorized so to do. R. L. c. 76, § 8. St. 1917, c. 55, § 2. G. L. c. 112, § 6. The only questions raised by the exceptions are whether there was evidence justifying the jury in finding that he did so hold himself out and did practise medicine in Ware, that town being within the jurisdiction of the District Court of Eastern Hampshire in which the proceedings were instituted. It was admitted that the defendant was not a physician and that he was not authorized to practise medicine within the Commonwealth.

One John Lak, who lived in Ware, on March 30, 1920, suffered a simple fracture of the tibia and fibula of his left leg, and for two days thereafter was under the care of a local physician. The defendant, who lived in Salem, Massachusetts, and was ."known" in Ware, came to Ware on April 1, 1920, to see Lak relative to his injury. He examined the injured leg and found that it was fractured. The evidence was sufficient to justify the jury in finding the remaining facts to be as follows: The defendant removed the bandages which were then around the leg, examined the leg and said that it was broken. He then set it. In doing this he used an external application of the consistency of cream, cotton, splints, cloth bandages and adhesive "tape plaster." He

told Lak that after forty days' rest the leg would be all right. He then upon request examined Lak's ankle and knee and said that the ankle and the knee cap were out of joint. He remedied, or purported to remedy, these troubles, and left with the injured man a small bottle of the medicine which had been applied to his leg. In response to an inquiry by Lak he said to him: "I will be here in town in about two weeks, I have an office in the Storrs House [an inn in Ware] and anybody can come and see me and I can let you have some more [referring to the medicine]." There was a second visit made and the defendant was paid $40 for his services, — $35 for the first visit and $5 for the second.

The defendant had been engaged in business for twenty-five years, had offices in Salem, Worcester and Chicopee, and also came to Ware, where he used a room in the Storrs House as an office. There was no evidence that he displayed any signs in Ware. He does not argue that the services rendered were casual or without the usual course of his calling. In his brief he thus states the question of law involved: "Does a bone-setter require a license under the Massachusetts law, as one who is engaged in the practice of medicine or surgery?" He supplements this with the further contention that, under R. L. c. 76, § 8, there is a distinction between medicine and surgery and that the statute does not provide for the punishment of one who practises surgery unless the practice is under a false or an assumed name.

The statute under which these proceedings are instituted provides for the registration of physicians and surgeons. It does not permit their separate examination. The examinations for registration of all applicants must include anatomy and surgery, and are required to be "sufficiently thorough to test the applicant's fitness to practise medicine." The statute makes it a criminal offence not only for a person to hold himself out as a practitioner of medicine and to attempt to practise medicine in any of its branches, but to practise "medicine or surgery under a false or assumed name, or under a name other than that by which he is registered." The words "practitioner of medicine" and "practise medicine in any of its branches" as used in the statute include the practitioner and the practice of surgery. While the practice of medicine in a strict sense may be divided into various branches,

it includes the art of remedying the results of violence and accident by setting fractured bones.

This result is within the reason of our decisions and is required by the statute, notwithstanding both physicians and surgeons are referred to therein. In *Commonwealth* v. *Zimmerman,* 221 Mass. 184, the conviction of one who practised the chiropractic system of healing was upheld. It was said: "Medicine relates to the prevention, cure and alleviation of disease, the repair of injury, or treatment of abnormal or unusual states of the body and their restoration to a healthful condition. It includes a broad field. It is not confined to the administering of medicinal substances or the use of surgical or other instruments." This construction of the statute was necessary to the decision of that case and is in accord with our other decisions. *Commonwealth* v. *St. Pierre,* 175 Mass. 48. *Commonwealth* v. *Porn,* 196 Mass. 326. *Commonwealth* v. *Jewelle,* 199 Mass. 558. *Commonwealth* v. *Houtenbrink,* 235 Mass. 320. It is decisive of the cases now under consideration.

If the jury found that the defendant for hire diagnosed Lak's injury and treated it in the manner described, his conviction of practising medicine without registration was required by the statute. His conviction of the offence of holding himself out as a practitioner of medicine contrary to R. L. c. 76, § 8, as amended, was well warranted, if he had been engaged in the practice of bone setting for twenty-five years in various places, had represented that he was qualified to perform such services, had a room in Ware, which he said was his office in which he transacted that business, and if he rendered the services to Lak already described. *Commonwealth* v. *Houtenbrink, supra.* The requested rulings were properly refused.

*Exceptions overruled.*