COMMONWEALTH *vs.* CARMINE FARESE & others.

Middlesex.    October 15, 1928. — December 24, 1928.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Intoxicating Liquor. Conspiracy. Evidence,* To prove conspiracy, Presumptions and burden of proof.

While, at the trial of indictments charging conspiracy to commit a crime, evidence of declarations and conversations in which alleged conspirators were parties is frequently introduced to prove the offence charged, such evidence is not necessary to prove the crime beyond a reasonable doubt; it may be shown by the acts and conduct of different persons and the reasonable inferences that may be drawn therefrom.

It is not essential to the sustaining of the burden of proof of a conspiracy charged in an indictment that it be shown that the alleged conspirators met or conferred and formulated their plans; common purpose may be inferred by concerted action converging to a definite end.

The trial of an indictment charging three with conspiring to manufacture, transport, expose and keep for sale, and the sale of, intoxicating liquors contrary to law, proceeded against one of the defendants only. There was no evidence of declarations or conversations in which either of the other two alleged conspirators and the defendant were parties. There was evidence of the conduct of an elaborate still and establishment for preparing illicit liquor for sale in a shed adjacent to a house on the first floor of which the defendant lived, and of materials for such manufacture and traffic in a garage under the house; that the defendant kept a truck in that garage which he had been seen driving into the garage with a load on one or two occasions, once with a square package about the size of six one-gallon cans; that an electric light in the shed was operated from a switch at the back of the first floor of the house where the defendant lived and was connected with a meter for the house, and that a bill for electricity for the house for two months was found in the defendant's possession. Another family lived in the house above the defendant. *Held*, that the evidence warranted a verdict of guilty.

INDICTMENT, found and returned on May 7, 1928, against Carmine Farese, John Farese and Rocco Cicolo, and described in the opinion.

The defendants Carmine Farese and Rocco Cicolo pleaded guilty. Material evidence at the trial of John Farese in the Superior Court before *Hall*, C.J., is stated in the opinion. He rested at the close of the evidence for the Commonwealth and moved that a verdict of not guilty be entered. The motion was denied, he was found guilty and alleged exceptions.

The case was argued at the bar in October, 1928, before *Crosby, Pierce, Carroll, & Sanderson*, JJ., and afterwards was submitted on briefs to *Rugg*, C.J., and *Wait*, J.

*J. P. Walsh*, for the defendant John Farese.

*R. T. Bushnell*, District Attorney, for the Commonwealth.

CROSBY, J. The defendants were indicted for conspiring to manufacture, transport, expose and keep for sale, and the sale of, intoxicating liquors contrary to law. The defendants Cicolo and Carmine Farese pleaded guilty; the latter was a brother of John Farese, another defendant, who will hereafter be called the defendant. He rested at

the conclusion of the evidence offered by the Commonwealth, and moved that a verdict of not guilty be directed in his favor. The motion was denied, subject to his exception. He also made the following requests for rulings: "5. There is no evidence that John Farese ever entered into a combination, association or agreement to perform a criminal act or for a criminal purpose. 6. The government has failed to show on all the evidence any agreement, combination or association for a criminal purpose." These requests were refused subject to the defendant's exception.

All the evidence offered by the Commonwealth is embodied in the bill of exceptions, and in substance is as follows: The defendant lived on the first floor of a single house with a garage under it at No. 200 Warren Street in Watertown. Behind the house, and a short distance from it, was a shed twenty by thirty feet. On the date of the arrest there were found in the garage two hundred and fifty gallons of denatured alcohol in five drums, two hundred gallons of wine in six barrels, nine empty fifty gallon iron drums, and two empty fifty gallon barrels. The defendant had a truck which he kept in the garage, and he had been seen, on one or two occasions, driving the truck in with a load, and at one time with a square package about the size of six one-gallon cans. In the shed the police found one complete sectional boiler twelve or fourteen feet high, one copper still, one fuel oil tank, one seven hundred gallon condenser, one hundred feet of iron pipe, six hundred new one-gallon cans, forty new five gallon cans, twelve cans of caustic soda, one hundred and forty gallons of alcohol in containers, and an assortment of bottles both pints and quarts, wrapping paper and string. The still was operating, and the condenser contained almost seven hundred gallons of alcohol. There was a pipe running from the shed to the street, and under the street to a swamp; and another pipe line from the shed to the cellar of the house in which the defendant lived on the first floor; another family lived upstairs. The cellar was partitioned off "but . . . of the witness's own knowledge he did not know to whom the different parts of the cellar belonged; that in order to move the still, it was necessary to

pull out the front of the building." An electric wire was attached to a socket on the piazza at the back of the house on the first floor, and ran to the shed, and at the time of the arrest, the light was on in the shed. After the arrest of the defendant a bill for the electric light furnished at No. 200 Warren Street, Watertown, was found in his possession; it was made out in his name and was for two months, one item for $5.45 and the other for $7.41. There was but one meter in the cellar, and there was evidence that this wire was connected with the meter. In the cellar of the house several barrels of wine were found with the tag on the barrels reading "Carmine Farese." At the time of the raid the officers found Carmine Farese in the shed, and Cicolo behind the still in the shed.

The only question for decision is whether the foregoing evidence was sufficient to warrant the conviction of the defendant.

It is manifest that the other two defendants, who were alone in the shed, might well have been the only ones in charge of the still, and engaged in its operation. This is conceded in the brief of the defendant. There was little, if any, direct evidence tending to show a conspiracy between the defendants. The offence, however, may be proved by circumstantial evidence, which is the usual way of proving it. *Commonwealth* v. *Smith*, 163 Mass. 411, 418. *Commonwealth* v. *Riches*, 219 Mass. 433, 438. In cases of conspiracy evidence of declarations and conversations in which alleged conspirators were parties is frequently introduced to prove the offence charged. In the case at bar there was no evidence of such declarations or conversations. But such evidence is not necessary to prove the crime. It may be shown by the acts and conduct of different persons and the reasonable inferences that may be drawn therefrom. "'The acts of different persons who are shown to have known each other, or to have been in communication with each other, directed towards the accomplishment of the same object, especially if by the same means or in the same manner, may be satisfactory proof of a conspiracy.' . . . It is not essential to a conspiracy that the parties meet or that they confer and

formulate their plans. Common purpose may be inferred from concerted action converging to a definite end." *Attorney General* v. *Tufts*, 239 Mass. 458, 494. *Commonwealth* v. *Hunt*, 4 Met. 111. *Commonwealth* v. *Rogers*, 181 Mass. 184. *Commonwealth* v. *Clancy*, 187 Mass. 191. *Commonwealth* v. *Riches, supra. Commonwealth* v. *Dyer*, 243 Mass. 472, 504.

Applying these well settled principles to the evidence in the case at bar, it could have been found that the two defendants, other than John Farese, were operating the still and manufacturing intoxicating liquor in a shed located on premises where the defendant lived, and that the shed was lighted by an electric light which was furnished and paid for by the defendant. There was but one meter in the cellar. Although there was no direct evidence to show that the charges made for electricity on the bills found in the possession of the defendant were for electricity used by him at those premises, nevertheless, in the absence of any evidence that the defendant had been furnished with electricity at any other place, it could have been inferred that the charges were for electricity furnished him on the premises where he lived, and that it was used in part to light the shed where the liquor was being manufactured. In view of all the evidence including the evidence that the defendant kept a truck on the premises, which he had been seen driving into the premises with a load in it, and at one time with a package the size of six one-gallon cans, in the opinion of a majority of the court it could reasonably be inferred that all three defendants were engaged in a conspiracy to manufacture, transport and sell intoxicating liquors as charged in the indictment.

It follows that the requests for rulings were rightly denied, and that the motion for a directed verdict could not properly have been allowed. *Commonwealth* v. *Waterman*, 122 Mass. 43, 59. *Commonwealth* v. *Stuart*, 207 Mass. 563. *Commonwealth* v. *Riches, supra. Commonwealth* v. *Muchnickoff*, 257 Mass. 181.

*Exceptions overruled.*