### HLUCHANICH v SOFRANEC

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 30, 1934

J. G. Hartwell, Youngstown, and Wilson, Hahn & Wilson, Youngstown, for plaintiff in error.

W. P. Barnum, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

The treatment given by the defendant was diametrically opposed to what was necessary and essential to reunite these broken parts. It consisted of a constant and violent manipulation of the patella, creating inflammation, accumulation of blood, and a substance which appears under these conditions which lessens subsequent ability of nature to accomplish a good result and give more than a limited subsequent motion to the joint involved.

Not only was this broken condition of the patella positively established by the X-ray pictures taken, but the opening or separation of these two pieces was easily apparent by placing a finger upon the patella. The condition was also visible to sight. It is not understood that it is even claimed or contended in behalf of the defendant that a fracture did not exist. While it appears in evidence that the defendant caused an X-ray to be taken by Dr. Peterson, the medical testimony is to the effect that the practice is to take two X-rays, one from the front or rear, and one from the side of the injury, so that the precise condition may thus be determined. If there is any claim on the part of the defendant that the fracture could not be by him determined from the single picture which he had taken, he admits in his testimony that he knew that two pictures were necessary to positively establish the nature of the injury.

After the operation by Dr. Morrall and putting the limb in a cast, after a long period of suffering the plaintiff finally acquired a limited use of this knee, his ability to operate the joint being considerably less than one-half of the natural use of such joint. That the conduct or treatment of the defendant was wrong, and negligently wrong, no doubt is entertained. The verdict having been for the defendant, it is claimed by counsel for the plaintiff that prejudicial error occurred in several respects during the trial. One is that the judgment is against the manifest weight of the evidence. That the fact is such this court finds. The defendant never discovered the real condition or nature of the injury and never gave it proper treatment, resulting in material damage to the plaintiff.

It is claimed that the court erred in the instructions to the jury. Twelve written requests to charge before argument were made by the defendant. The first one is simply for a directed verdict. The last relate to the manner of the consideration of the case by the jury. All except the first were given. Request No. 2, so given, reads as follows:

"The court says to you as a matter of law that the defendant cannot be held liable unless you find by a preponderance of all the credible evidence in the case that he, the defendant, failed to exercise a degree of care, diligence, judgment and skill, which practitioners in the Mechano-Therapy School of Medicine usually exercise in this locality under like circumstances."

Request No. 8 reads as follows:

"The burden is upon the plaintiff, Hluchanich, in this case to prove that the defendant, in his treatment of the plaintiff, used a method considered to be improper by those competent to judge the practice of Mechano-Therapy as defined by the law of Ohio, and the mere fact that the defendant's conduct may be considered improper by any other school of medicine is not to be considered by you."

Request No. 10 reads as follows:

"The court says to you as a matter of law that in determining whether or not the defendant exercised the proper degree of care, skill and judgment as a mechano-therapist, you are to entirely disregard the opinion of any medical expert witnesses in this case unless it has been shown by such a witness that he was acquainted with the science of Mechano-Therapy and understood the practice of that branch of medicine as defined by the law of the State of Ohio."

By these instructions the jury was directed upon the question as to whether the defendant failed to exercise a proper degree of care, judgment and skill in the treatment of the plaintiff, that such question must be determined by the testimony of practitioners in the Mechano-Therapy School of Medicine, and be such as such practitioners in the same locality use under

like circumstances. In other words, essential to a finding of the jury in favor of the plaintiff, it must appear by testimony of practitioners in this particular school or cult of practice, living and practicing in the vicinity, that the defendant did not use such skill or diligence as was usually exercised by such person so testifying, and the jury was instructed that the fact, if such it be, that the defendant's conduct might be considered improper by members of any other school of medicine must not be considered by the jury. So the result of these instructions was such that no matter what the conduct of the defendant may have been, there could be, under the instructions of the court, no verdict returned against the defendant unless such verdict was the result of a conclusion reached of negligence from the testimony of other persons practicing similarly as mechano-therapists in the vicinity, that the conduct of the defendant was negligent or not in conformity with the ordinary line of practice of such persons so testifying.

It is apprehended that mechano-therapy is not very common. There is nothing in the evidence to indicate that any other person is so engaged in the vicinity of the residence of these parties, and if perchance he be the only one coming within the definition and locality, then there was no one, under the instructions of the court, competent to testify against this defendant, whether his conduct was improper or not or in conformity with the ethics of their particular profession, and therefore the defendant was immune and could not be convicted of malpractice in this case.

Referring again to the instructions before argument of the trial court, only members practicing this particular line of effort were competent to testify upon the question as to whether or not the conduct of the defendant constituted negligence; that is to say, concededly this defendant was only authorized to treat a sprain, that he had no right to treat a fracture. There was a fracture, and as to whether the conduct of the defendant was proper or improper should be determined by practitioners in such school of medicine or surgery who were competent, experienced and qualified to speak concerning the proper practice in the existence of such an injury. The instructions of the court restricted the testimony as to whether the treatment was proper to a class of persons who were not skilled, learned or versed in such cases, and prevented those who could intelligently answer from giving evidence to be considered by the jury or in reaching a result unfavorable to the defendant.

Perhaps more formerly than in recent years the practice of medicine was generally divided into different schools, known, for instance, as allopathic, homeopathic, Thomsonian, hydropathic and so forth. All of these schools were skilled and learned in the general practice of medicine and surgery, as the case might be. Their medicines and treatments, presumably, to some extent, differed concerning certain ailments or injuries. Which school was right, where they thus differed, was a matter of opinion, and a rule was developed that in determining in a malpractice case whether a proper degree of care and skill had been exercised, that the testimony should be by witnesses who were themselves learned in that particular school.

This is an age of specialization. The field of medicine and surgery is too broad for a person to become especially eminent and attempt to cover the whole or a considerable part of the field of practice. Therefore, we have specialists; for instance, eurologists, who treat only the organs of the lower body; heart specialists, who treat the cardiac region; specialists who devote their time and learning to the diseases of the respiratory tract. Others limit themselves to diseases of the eye, the ear or to the brain and to nervous diseases. This is only a partial enumeration of the particular fields of specialists, and a specialist in one of these lines presumably would not feel himself competent to testify as an expert upon some matter involving disease or practice in some other line. However, certain diseases or ailments may be of such a nature and such a location as to properly come within the knowledge and consideration of those practicing in different lines. For instance, in the case under consideration it was apparent that an injury had been sustained to the knee joint. If it was simply a sprain, it would have been proper for the defendant, exercising his knowledge as a mechano-therapist, to have given it treatment. If it was not a sprain, but a broken bone, then it was outside of the defendant's line of endeavor and belonged to some other class for treatment. It would seem to be profitable in the introduction of expert testimony concerning a disputed proposition as to whether a fracture or a sprain exists, when it is determined without doubt that it is a fracture, that the proper treatment for the curing of that condition should be by witnesses who are skilled in that particular line, and not by witnesses who belong to the cult or school of the per-

son who mistakenly starts out upon the presumption that it is a sprain. In other words, the question of the existence or absence of negligence should be determined by the testimony of those who are skilled on that subject, rather than those who are not skilled, which latter was the rule established by the court in the submission of this case to the jury.

Usually in cases involving malpractice no question arises as to who are competent witnesses. Difficulty may be encountered in finding a case involving the precise question in the instant case. Attention is directed to the case of Nancy Whipple v Ernest S. Grandchamp, decided by the Supreme Judicial Court of Massachusetts, October 14, 1927, reported in 158 NE, 270, and 38 A. L.R., 974. A somewhat similar question was involved in this case. Time will not be taken to make a statement of the facts. It is said in the opinion, commencing at the bottom of page 976:

"It was decided in Com. v Zimmerman, 221 Mass., 184, 108 NE, 893, Ann. Cas. 1916 A, 858, that one holding himself out as a chiropractor is engaged in the practice of medicine as that term is used in Rev. Laws, chap. 76, §8, now Gen. Laws, chap. 112, §6 (Stat. 1927, chap. 137), and is required to be licensed if the services which he renders, or which he holds himself out as having capacity to exercise, fall into any part of the entire field of the science of medicine or surgery. Com. v Dragon, 239 Mass. 549, 132 NE, 356. The defendant held himself out as competent to treat the ailments of the plaintiff according to the methods, rules and principles of chiropractic; and offered at the trial to prove that he did possess the learning and skill, possessed and exercised by chiropractors practising in this and similar communities."

Then it says:

"The offer of proof was refused rightly. The defendant in his treatment of the ailment of the plaintiff was exercising his calling as a chiropractor in a matter within the field of medicine or surgery, and while so acting was not within any one of the exempted schools, classes, persons or situations enumerated and described in Rev. Laws, chap. 76, §9, (Gen. Laws, chap. 112, §7). His acts therefore were unlawful, as would be like acts of any associate members of the school of medicine called 'chiropractic'."

On page 978, after referring to an instruction given by the court to the jury, it is said in the opinion:

"This instruction was more favorable to the defendant than he was entitled to; and the same is to be said of the instruction: 'So when this defendant undertook to apply medical treatment, if he did undertake to apply medical treatment, there was an implied understanding on his part that he had, and would bring to the performance of his undertaking, not only due care and skill, but that degree of skill and capacity ordinarily possessed by the duly licensed and competent physician of average skill and ability in his locality. This is, the degree of care and skill required of him is not to be ascertained and determined by ascertaining what degree of care and skill a chiropractor might exercise. He is held up, as I construe the law, as I instruct you, to the degree of skill and ability which the physician of ordinary ability and the physician of ordinary experience possessed in his locality'."

This decision thus recognizes the proposition heretofore suggested, that the testimony upon which the question of negligence is to be determined should not be from witnesses of limited capacity similar to the defendant, but from witnesses who are skilled and learned regarding the particular subject matter in dispute.

The conclusion is reached that these instructions, before mentioned, given by the court to the jury were erroneous, and their giving constituted reversible error.

Attention is called to special request No. 11, given before argument. It is quite long but was for use in case the jury found for the plaintiff. The court instructed the jury that there could be no recovery for any surgical or hospital expense for the operation on his knee by Dr. Morrall, for any pain or suffering directly occasioned by any such operation, any limitation in plaintiff's knee which was the sole, direct result of the original fracture of his patella, or any loss or diminished earning capacity which was the sole, direct result of the original fracture of his patella.

To the extent that the wrongful treatment of the defendant increased the suffering and disability of the plaintiff, protracted his disability and lessened his ability to secure full action as a final result under proper treatment, the jury might properly take into consideration such matters as damage. There is evidence in this case that the operation by reason of the defendant's treatment and the delay incident thereto was more severe, that the bones had to be scraped or curatted, so that they might be made raw and give nature an

opportunity to act, which had been lost during the delay of the previous treatment. There is evidence that under proper treatment this man should have recovered the full use of his knee, and tending to indicate that this limitation of the use is the result of the conduct of the defendant. It is said that there was error in the admission of Exhibit C, which is sort of a card index kept by the defendant. It is not thought that this was a proper subject for admission, but its reception was not sufficiently important to constitute reversible error.

For the reasons herein given the judgment of the Court of Common Pleas is reversed and the cause remanded.

Judgment reversed.

FARR and LYNCH, JJ, concur in the judgment.