COMMONWEALTH *vs.* CHARLES L. McHUGH & others
(and companion cases).

Middlesex.     March 6, 1944. — April 26, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*False Pretences. Conspiracy. Fraud. Evidence,* Relevancy and materiality, Intent, Conspiracy, Course of conduct.

Upon indictments charging two defendants with a violation of G. L. (Ter. Ed.) c. 266, § 31, in obtaining, by a false pretence with intent to defraud, the signature of the owner of unencumbered land to a written contract for a sale of the land to one of them through the other, who purported to act as a broker, and with a conspiracy to commit that crime, findings of guilty were warranted by evidence, which was properly admitted as bearing on the intent and concerted action of the defendants, that the contract so procured provided for payment of the purchase price partly in cash and partly by a note secured by a second mortgage subject to such first mortgage as the purchaser might obtain; that the defendants falsely represented that a genuine sale was sought with intention of the purchaser to occupy the property; that the seller's signature would not have been obtained had he not believed

that the purchaser made such representation in good faith and so intended; that the purchaser procured a substantial first mortgage through false statements to a bank and appropriated the proceeds thereof over the amount of the cash payment made to the seller; that the purchaser never occupied the property but permitted foreclosure of the first mortgage after a few payments had been made thereon; and that the defendants had acted in concert in similar transactions with other property owners within a few months of the offence charged.

Upon the trial together of two indictments, one charging three defendants with a conspiracy to commit the crime described in G. L. (Ter. Ed.) c. 266, § 31, and the other charging two of the three with such a crime, the evidence warranted a finding that one of the three was not guilty under the first indictment but that the other two were guilty thereunder and that the conspiracy between them ended on a certain date, after which the one so acquitted entered with one of the other two into the conspiracy charged in the second indictment; and there was no inconsistency between the verdict under the first indictment and a verdict of guilty under the second indictment.

INDICTMENTS, found and returned on September 12, 1940, and described in the opinion.

The cases were heard together by *Williams*, J., without a jury.

*J. C. Johnston*, for the defendant Mullaney.

*A. W. Wunderly*, Assistant District Attorney, for the Commonwealth.

RONAN, J. The defendant Mullaney was convicted at a trial before a judge without a jury upon an indictment which charged him and the defendant McHugh with violating G. L. (Ter. Ed.) c. 266, § 31, in that they did obtain, by a false pretence and with intent to defraud, the signature of one Thompson to a written contract for the sale of her land to Mullaney, the said written contract being of such a nature that the false making of it would be punishable as a forgery. Mullaney and McHugh were also found guilty upon an indictment charging them with conspiracy with the defendant Weathers, Harold M. Chapin and Elsie A. Chapin, between September 1, 1937, and July 1, 1939, to commit the crime denounced by said c. 266, § 31. The first case is here upon appeals by both Mullaney and McHugh with various assignments of error; and the second case is here upon exceptions alleged by both of these defendants. The two indictments already mentioned were tried with

three other indictments: one charging McHugh, Weathers and Mullaney with a conspiracy to steal, upon which McHugh and Weathers were found guilty and Mullaney was found not guilty; the second charging McHugh and Weathers with stealing $40, upon which both were found guilty; and the third charging McHugh and Weathers with obtaining by a false pretense the signatures of two persons to a contract of sale of their land, which resulted in a finding of guilty as to both of these two defendants. The errors alleged to have been committed at the trial of these last three indictments are brought here by an appeal as to the last one, by exceptions of McHugh as to the first two, and by a report in the case of Weathers who had inadvertently lost his right to file exceptions. No argument was made in this court in behalf of McHugh and Weathers and neither filed any brief.

We first consider the two indictments upon which Mullaney was found guilty. He contends that the evidence was insufficient to support a finding of guilty in either case; that the intention of the defendant to suffer a default of the first mortgage would not warrant a conviction; that the evidence of fraud by Mullaney in making out the application for a mortgage loan was not admissible; that the fact that Mullaney had made contracts similar to the Thompson contract would not warrant the inference that he did not intend to make a genuine contract of sale with her; and that the representation as to the use Mullaney intended to make of her property was not material. These contentions and the denial of the thirteenth, fourteenth and sixteenth requests for rulings are the only questions now argued. These requests in effect were for rulings that the judge should disregard any fraud committed by Mullaney in filing the application for the mortgage loan in determining his intent in making the contract with Mrs. Thompson, and that specific acts of misconduct of Mullaney were not admissible to prove character. We confine our discussion to the questions raised by this defendant.

The evidence, if believed, was sufficient to prove the facts that we now state. McHugh for a number of years had

been engaged in a small way as a real estate broker. Mullaney had conducted an insurance and real estate business in Lowell for two or three years before he moved to Newton in 1937. His real estate business had not been extensive and he became a salesman of stocks and securities. He became acquainted with McHugh in 1937. Mullaney testified that he was looking for a place to establish a wayside restaurant, and McHugh suggested that he should examine the property of one Mrs. Thompson, in Waltham, which had been listed for sale by her with McHugh. McHugh and Mullaney visited Mrs. Thompson in November, 1937. McHugh introduced Mullaney as a prospective buyer. While the latter was thoroughly inspecting the property, McHugh told her that he thought Mullaney would buy the property. On a second visit Mullaney offered $5,500, but Mrs. Thompson wanted $6,500. McHugh and Mullaney again called upon her in the middle of the afternoon of December 4, 1937. Mullaney produced a written agreement which he read to her and which she then looked over, and she "saw that there was a second mortgage for . . . [her] to take up." She told them that she did not want to sign it until she had talked with a friend and obtained his advice. They told her there was no time for that as Mullaney was in a great hurry because he had to take a train for New York. Mullaney would not leave the contract with her so that she might have an opportunity to consult an attorney. She did not want to sign. She asked McHugh if she should sign and he told her that he thought it would be all right. She then signed the agreement. This agreement provided that the purchase price was $6,500, of which $250 had been paid, $3,000 was to be paid in cash and the balance was to be paid by a note payable in two years and secured by a mortgage upon the premises, and further provided that "It is understood and agreed that the said mortgage shall be subject to a first mortgage in such sum as the party of the second part [Mullaney] may be able to procure to be loaned upon said premises." The $250 referred to as paid down was a check which Mullaney gave McHugh as a part of his commission. After the agreement was signed Mullaney

filed an application for a loan with a coöperative bank which he signed in the names of Harold M. Chapin and Elsie Chapin as their agent. He had arranged with the Chapins to pay them $100 for acting "as straws" in the transaction. Chapin was employed and was receiving $25 a week. Mullaney stated in this application that Chapin was receiving $65 a week and a commission; that the purchase price of the property was $9,500; and that the property was intended to be occupied by the owners. The bank granted a loan of $4,200, $200 of which was to be retained until the outside of the house had been painted. Mrs. Thompson was represented by an attorney when the conveyance of the property was made to the Chapins on December 22, 1937. Her attorney insisted that Mullaney sign the mortgage note and he did. Mrs. Thompson received $2,695.54 in cash, which represented $3,000 less certain deductions. She also received a note for $3,250 secured by a second mortgage. The bank advanced $4,000, and the difference between this amount and the $3,000, less whatever incidental expenses Mullaney may have incurred, including a fee to his counsel, was retained by Mullaney who testified that he was unable to state what he did with this money. McHugh received a commission of $390 which appears to have been deducted from the purchase price. The Chapins never occupied these premises and neither did Mullaney. He testified that he found that they were impractical for use as a restaurant or filling station. Four monthly payments were made to the coöperative bank. Although Mullaney's wife had on June 13, 1938, assumed the obligation of the loan to the bank, no payment thereafter was made upon its mortgage note. The property was vacant after Mrs. Thompson moved out in March, 1938. The bank's mortgage was foreclosed on September 29, 1938.

One Mrs. Scheibe owned two parcels of land in Lexington which she had advertised for sale. McHugh and Mullaney saw her early in December, 1937. Mullaney said he intended to buy the place and live there and to develop the vacant land. Mullaney inspected the house, and while he was doing

so McHugh told Mrs. Scheibe that Mullaney came from a fine family and had plenty of money behind him to develop the land. A second visit followed on December 11, 1937. Mullaney said that he had decided to buy but that she must make a quick decision as he was leaving by plane for Washington, and that he had another parcel of land in mind if he did not buy her property. Mullaney produced an agreement which he showed to McHugh who read it and stated that he had never seen a better agreement. Mrs. Scheibe wanted time to decide whether she should sign the agreement. She telephoned two friends, both of whom talked with Mullaney who told them that the transaction was absolutely safe for Mrs. Scheibe and that she was protected in every way. She signed the agreement. Mullaney passed a check for $500 to McHugh as the initial deposit for the land and McHugh was to hold it as part payment of his commission. This agreement stated that the purchase price of the property was $25,000, of which $500 had been paid down, $7,000 was to be paid in cash upon the delivery of the deed, and the remainder was to be paid by a note secured by a mortgage, which was to be subject to a first mortgage in such an amount as Mullaney was able to obtain. The next day Mrs. Scheibe telephoned to McHugh that her brother-in-law had informed her that the mortgage that she was to receive was not a first mortgage as she thought it was. He told her "Why, certainly, Mrs. Scheibe, that is a first mortgage." He said he would telephone to Mullaney, and when she directed attention to the fact that Mullaney was in Washington, McHugh hesitated and said "No." The next day she referred the matter to her attorney and the transaction came to an end upon the issuance of a temporary restraining order against McHugh and Mullaney.

Neither Mrs. Thompson nor Mrs. Scheibe would have signed the agreements unless they believed that Mullaney was acting in good faith and intended to make a genuine purchase of their properties. Mrs. Thompson reasonably inferred that Mullaney was buying to occupy her property, and a week later Mullaney stated to Mrs. Scheibe that he intended to live upon her premises when he acquired them.

In each instance Mullaney spent considerable time in inspecting the house, and while he was doing so at Mrs. Scheibe's McHugh took occasion to tell her of the fine family connections of Mullaney and of his financial resources.

Mullaney entered into a similar contract with one Mrs. Hewins in January, 1938. He was compelled to change the agreement upon the insistence of her attorney. A disagreement arose over the payment of a commission to McHugh. Thereafter, Mullaney and McHugh had no further transactions between them.

It is the contention of the Commonwealth that Mullaney never intended to make any genuine contract with Mrs. Thompson to purchase her property, but that he assumed the false rôle of a purchaser in order wrongfully to appropriate for his own benefit, or for the joint benefit of McHugh and himself, the difference between the amount realized upon the first mortgage and what he was required to pay her in cash, and that the evidence was sufficient to prove that McHugh and Mullaney had entered into a conspiracy to perpetrate similar frauds on other owners of unencumbered lands. The burden was upon the Commonwealth to prove that the contract of sale was not a real business undertaking honestly engaged in for the purpose of enabling a purchaser to acquire a conveyance of the land, but that it was a fraudulent device employed not merely to acquire title to the land but principally to put the so called purchaser in a position where he could reach and appropriate for his own benefit as much of the proceeds of the first mortgage as was not required for the cash payment to the seller.

The representations of Mullaney which led up to the execution of the contract of sale by Mrs. Thompson; his statements to her a few days thereafter when he again looked over the property ostensibly for the purpose of contemplating what repairs should be made for fitting up the premises for a restaurant which he told her would cost $1,200; the making, within three days of the contract, of false statements upon the application for a loan at the bank; the agreement with Mrs. Thompson made at the time of the conveyance on December 22, 1937, that she might occupy the property

until April 1, 1938, notwithstanding his apparent purpose to make immediate repairs to adapt the property for a commercial use; the failure to take any real possession of the property, to make any improvements thereon, and to pay more than four monthly payments to the bank; and the default upon the first mortgage with the consequent foreclosure, were all properly admitted in evidence and competent upon the issue whether Mullaney intended to transact an honest undertaking with Mrs. Thompson or whether he intended, by putting on the garb of a prospective purchaser, to reach as much as possible of the first mortgage proceeds and thereupon to withdraw from the scene, abandoning a piece of property saddled with two mortgages aggregating more than the purchase price and putting the burden upon the former owner of paying the first mortgage, a part of the proceeds of which Mullaney got, if she wished to protect her second mortgage.

The judge could find upon all the evidence, as he impliedly did, that Mullaney had falsely assumed the character of a bona fide purchaser and had by his conduct and representations — all of which were admissible — designedly misled Mrs. Thompson into believing that he was making a genuine contract with her for the purchase of her property, when in fact he was employing the contract as a sham and a device to defraud her, and obtained her signature to the contract of sale by posing as one who was honestly interested in the purchase of her premises. *Commonwealth* v. *Stone*, 4 Met. 43. *Commonwealth* v. *Walker*, 108 Mass. 309. *Commonwealth* v. *Morrison*, 252 Mass. 116. *Bank of Commerce & Trust Co.* v. *Schooner*, 263 Mass. 199, 205–206, and cases cited. See *Commonwealth* v. *Hutchison*, 114 Mass. 325; *State* v. *Switzer*, 63 Vt. 604.

The Commonwealth did not rely upon the default of the mortgage to sustain a conviction. Neither did it introduce any evidence of misconduct of Mullaney in securing the signature of Mrs. Thompson or in his subsequent acts with reference to her property as evidence of his character but it offered this evidence to prove the intent by which Mullaney was actuated in obtaining her signature. Moreover,

his intent in this respect could be shown by his participation in similar transactions at about the same time as the Thompson contract, as indicative of his intent in contracting with her. *Commonwealth* v. *Dow*, 217 Mass. 473, 480. *Commonwealth* v. *Farmer*, 218 Mass. 507, 512. *Commonwealth* v. *Riches*, 219 Mass. 433, 439. The evidence of these other similar transactions by Mullaney was also admissible to show that he and McHugh were acting in concert in accordance with a plan or scheme which they had devised to defraud such owners of unencumbered land as could be induced to make contracts of sale with Mullaney. *Commonwealth* v. *Stuart*, 207 Mass. 563. *Commonwealth* v. *Lindsey*, 223 Mass. 392. *Commonwealth* v. *Corcoran;* 252 Mass. 465, 487. *Commonwealth* v. *Cheng*, 310 Mass. 293, 295. *Commonwealth* v. *Mannos*, 311 Mass. 94, 114.

The evidence was sufficient to prove that Mullaney and McHugh entered into a conspiracy after September 1, 1937, the date stated in the indictment as the time of its commencement, and that it terminated in January, 1938, when these defendants ceased to be associated together in any further transactions. *Attorney General* v. *Tufts*, 239 Mass. 458. *Commonwealth* v. *Farese*, 265 Mass. 377. *Commonwealth* v. *Galvin*, 310 Mass. 733. *Commonwealth* v. *Mannos*, 311 Mass. 94. *Commonwealth* v. *Beal*, 314 Mass. 210.

It is to be noted that the judge found Weathers not guilty on this indictment. He could apply the evidence to the indictment and could properly find that a conspiracy existed between McHugh and Mullaney up to January, 1938, when that particular conspiracy terminated. *Commonwealth* v. *Edds*, 14 Gray, 406. *Commonwealth* v. *Bloomberg*, 302 Mass. 349. This result was consistent with his finding of guilty against McHugh and Weathers on another indictment which charged them with a conspiracy between September 1, 1937, and July 1, 1939, but which, upon the evidence, came into existence after McHugh and Mullaney parted. There was no error in the finding, which the judge impliedly made, that the conspiracy between McHugh and Mullaney had terminated and was succeeded by a new one between McHugh and Weathers.

In view of what has been said, there is no need to discuss further any of the other contentions raised by Mullaney, for it is clear that no error of law was committed by the trial judge with reference to any of them.

Although neither McHugh nor Weathers was represented by counsel at the argument nor were any briefs submitted by them, we have examined the questions of law raised by them on the record. They are in the main substantially similar to those raised by Mullaney and, for reasons already stated, we perceive no error.

The judgments entered against Mullaney, McHugh and Weathers must be affirmed. The exceptions of Mullaney and McHugh must be overruled. The findings of guilty against Weathers in the cases brought here by report are free from error and judgments are to be entered upon them.

*So ordered.*