BARNEY EDWARD SACHS *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk. November 1, 1937. — May 31, 1938.

Present: FIELD, LUMMUS, QUA, & DOLAN, JJ.

*Medicine. Physician and Surgeon. Optometry.*

A registered physician was not "carrying on . . . the practice of medicine" within the meaning of § 2 of G. L. (Ter. Ed.) c. 112 in association with an unlicensed person if in that association he was engaged solely in the practice of optometry as defined in § 66, as amended by St. 1934, c. 339, § 2.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on February 16, 1937, seeking reversal of an order by the board of registration in medicine.

After hearing, the petition was dismissed by order of *Donahue*, J. The petitioner appealed.

*L. K. Nathanson*, for the petitioner.

*M. M. Goldman*, Assistant Attorney General, for the respondent.

QUA, J. This is a petition under G. L. (Ter. Ed.) c. 112, § 64, by a physician whose registration has been canceled by the board of registration in medicine. The board found that the petitioner "was acting as principal or assistant in carrying on the practice of medicine with an unlicensed person." In canceling the petitioner's registration the board purported to act under the authority of G. L. (Ter. Ed.) c. 112, § 2.

The case was heard upon a "Stipulation of Facts," at the end of which is the following: "The sole question raised is whether the petitioner in performing the acts herein described is practising medicine. It is agreed that if it appears that the petitioner was practising medicine, the decision of the board is correct and its findings and order should be upheld. It is further agreed that if the court finds that the petitioner was not practising medicine, then the decision of

the board is to be reversed and the license and registration be ordered restored to the petitioner." Thus it becomes our duty to decide the single question whether upon the facts agreed the petitioner was "carrying on . . . the practice of medicine" within the meaning of those words in G. L. (Ter. Ed.) c. 112, § 2.

The substantive facts upon which this question is to be decided are these: The petitioner and one Getter, "a lay person," were associated in the optical business known as "State Opticians" at Worcester. The capital was supplied by Getter and one Morris Sachs, a brother of the petitioner. Getter held the lease of the premises. He usually assisted the customer in selecting the style of frame after the customer's eyes had been examined. He and the petitioner drew weekly equal amounts from the income. Morris Sachs was regularly employed in Boston, but occasionally "assisted around the place" in Worcester. He drew no money. Business was obtained through newspaper advertising in the name of "State Opticians." Glasses designed to correct "the defective vision of the purchaser" were furnished complete for a single price. There was no special charge for the examination or the prescription. After the examination the lenses were ground as prescribed, fitted to the frame selected, and adapted by an employee to the eyes of the customer. The "firm," State Opticians, owned all optical instruments and equipment and paid all expenses. A part of the space upon the premises was partitioned for the office of the petitioner. His name followed by "M. D." was on the door, and his certificate of registration was displayed in his office. Customers were referred for examination to the petitioner. He diagnosed any optical defect, deficiency or deformity and, if necessary, prescribed the lenses or prisms for its correction or relief. He used no drugs and performed no surgical operations. He did only such acts as are included in the definition of optometry contained in G. L. (Ter. Ed.) c. 112, § 66, as amended by St. 1934, c. 339, § 2.

The practice of medicine as ordinarily understood covers a wide field. It does not necessarily involve the use of drugs. *Commonwealth* v. *Jewelle*, 199 Mass. 558. It com-

monly includes bone setting, *Commonwealth* v. *Dragon*, 239 Mass. 549, midwifery, *Commonwealth* v. *Porn*, 196 Mass. 326, chiropractic, *Commonwealth* v. *Zimmerman*, 221 Mass. 184, *Whipple* v. *Grandchamp*, 261 Mass. 40, 44, and by express statutory provision, osteopathy.    G. L. (Ter. Ed.) c. 112, § 10.    The work of an "eye specialist," *Commonwealth* v. *St. Pierre*, 175 Mass. 48, 51, and of an ophthalmologist, *Commonwealth* v. *Houtenbrink*, 235 Mass. 320, may also constitute the practice of medicine.    In this connection, however, it must be remembered that by etymology, by common usage and by judicial definition ophthalmology is a word of much broader signification than optometry.    Thus in the recent case of *New Jersey State Board of Optometrists* v. *S. S. Kresge Co.* 113 N. J. L. 287, 294, it is said of the distinction between the work of oculists and ophthalmologists on the one hand and that of optometrists on the other that "The first has relation to the practice of medicine and surgery in the treatment of diseases of the eye, and the second to the measurement of the powers of vision, and the adaptation of lenses for the aid thereof."

We have no disposition to adopt a narrow or constricted view as to what activities are comprised within the practice of medicine, particularly in those aspects which bear upon the maintenance of the public health and upon the protection and security of those who resort for aid to persons holding themselves out as possessing peculiar knowledge and skill in the treatment of disease.    Nevertheless, as stated at the outset, the question now before us is purely one of statutory construction.    As to such a question reference should first be had to the statutes themselves for such assistance as may be derived from their language, their chronology, and their form and structure with relation to each other.    See *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148.

St. 1894, c. 458, which established the board of registration in medicine and first required an examination and certificate as a condition of the right to practise, contained no definition of the practice of medicine and permitted the employment of any "method of healing" by unregistered

persons who did not hold themselves out as physicians or surgeons. See now G. L. (Ter. Ed.) c. 112, §§ 1–12A and §§ 61–65. When, however, by St. 1912, c. 700, the Legislature first regulated the practice of optometry, it specifically defined that practice as "the employment of any method or means other than the use of drugs for the measurement of the powers of vision and the adaptation of lenses for the aid thereof." § 1. This act was not an amendment of the law governing the practice of medicine. It set up an entirely new board for the examination and registration of applicants. §§ 2–5. It was not in form a new or different method of regulating a branch of the practice of medicine. Its form and substance were such as would naturally be chosen as appropriate to a new subject not regarded as already covered by statute. Moreover, although the act expressly exempted from its provisions physicians and surgeons "entitled to practise medicine in the commonwealth," it allowed them to be examined and registered as optometrists, and it contained this significant provision, "nor shall this act be construed to authorize any person to administer drugs in any form, to practise or claim to practise medicine or surgery in any sense, or to use any title or appellation intended or calculated to indicate the practice of medicine or surgery." § 10. It is difficult to believe that the Legislature regarded optometry, carefully defined in this statute, as a part of the practice of medicine under previous statutes, when in authorizing persons to practise optometry the Legislature itself declared that it did not authorize them to practise medicine "in any sense." The exception of physicians from the operation of the new act would seem to have been due, not to the belief that "optometry" as there defined was "medicine," but to the belief that there was no necessity for regulating qualified physicians who practised in the field of optometry. The act contains in the same sentence a similar exception of persons who merely sell glasses on prescription or as merchandise. § 10. The respondents argue that the petitioner is engaged in practice solely by virtue of his registration as a physician. This is true only in an indirect or qualified sense. An accurate

statement would be, we think, that the petitioner may practise optometry, because when the Legislature undertook to regulate optometry it excluded registered physicians from the scope of the act, thereby leaving them still free to practise as all persons had been before the passage of the act.

Subsequent amendments to the act of 1912 do not seem to have affected its construction so far as concerns the question here considered. See now G. L. (Ter. Ed.) c. 112, §§ 66–73A, as amended by St. 1934, c. 339. The definition of optometry has been somewhat particularized so that it now expressly includes "the diagnosis of any optical defect, deficiency or deformity of the human eye, or visual or muscular anomaly of the visual system," G. L. (Ter. Ed.) c. 112, § 66, as amended by St. 1934, c. 339, § 2, but it does not include the general treatment of diseases of the eye, and the provision differentiating the practice of "optometry" from the practice of "medicine or surgery in any sense" is still retained. G. L. (Ter. Ed.) c. 112, § 73, as amended by St. 1934, c. 339, § 2. The penalties for violations of law differ with respect to the two professions. Compare G. L. (Ter. Ed.) c. 112, § 6, with G. L. (Ter. Ed.) c. 112, § 72A, as inserted by St. 1934, c. 339, § 2.

Some assistance may be found in the manner in which the Legislature has dealt with other professions or occupations more or less analogous to the practice of medicine. Thus pharmacy and dentistry are each under the jurisdiction of a separate board, although physicians are in some specified respects exempted from the operation of the laws applicable to those professions. G. L. (Ter. Ed.) c. 112, §§ 24 and 35, as amended, §§ 43 and 53. So also nursing and veterinary medicine are under separate boards. G. L. (Ter. Ed.) c. 112, §§ 74, 54; and 55 as amended. But osteopathy, which is a method of curing human disease, is under the board of registration in medicine, G. L. (Ter. Ed.) c. 112, § 10, and chiropody, the statutory definition of which expressly includes medical and surgical treatment, was likewise under that board until 1937. St. 1917, c. 202, § 3. St. 1937, c. 425, §§ 1, 2. As to none of these

occupations is there any provision comparable to that hereinbefore quoted which bars the registered optometrist who is not a physician from practising "medicine or surgery in any sense."

Other considerations of a more general nature tend toward the conclusion that one who practises optometry exclusively is not commonly to be treated as practising medicine. Optometry in its origin and nature is more akin to the physical science of optics than to the science of medicine. Its emphasis today is upon supplying physical means to aid the bodily powers rather than upon the cure of disease. In the recent case of *McMurdo* v. *Getter*, 298 Mass. 363, 368, decided after the entry of the final decree in this case, it is said that "Undoubtedly the fitting and sale of eyeglasses began as a trade and not as a profession." Indeed the whole line of reasoning in that case, which was decided after careful consideration and wide search into the authorities, is inconsistent with the theory that optometry as now defined in this Commonwealth has been and now is a part of the practice of medicine. That case proceeds upon the theory that optometry acquired its present professional status solely by force of the statutes expressly relating to that particular subject and not as a branch of the practice of medicine.

In other jurisdictions, although the varying terms of the statutes may affect the result, it has been widely held, stated, or implied that practising optometry, without at any point overstepping the bounds which define that word, is not practising medicine. *Martin* v. *Baldy*, 249 Penn. St. 253. *People* v. *Smith*, 208 Ill. 31. *People* v. *Griffith*, 280 Ill. 18. *In re Rust*, 181 Cal. 73. *Saunders* v. *Swann*, 155 Tenn. 310. *Dvorine* v. *Castelberg Jewelry Corp.* 170 Md. 661. *State* v. *Rust*, 119 Wash. 480. *Bennett* v. *Indiana State Board of Registration & Examination in Optometry*, 211 Ind. 678. *Funk Jewelry Co.* v. *State*, 46 Ariz. 348, 354. *State* v. *Buhl Optical Co.* 131 Ohio St. 217, 221. *McNaughton* v. *Johnson*, 242 U. S. 344. In *Georgia Board of Optometry* v. *Friedmans' Jewelers Inc.* 183 Ga. 669, many recent cases are collected illustrating the modern recognition of

optometry as an independent profession or calling. And see cases collected in 22 Am. L. R. 1173. Compare, however, *State* v. *Corriveau*, 131 Maine, 79; *Swanz* v. *Clark*, 71 Mont. 385; *State* v. *Yegge*, 19 S. D. 234.

We are compelled to conclude that the petitioner, although he was a registered physician, was not carrying on the practice of medicine within the meaning of G. L. (Ter. Ed.) c. 112, § 2. The decree must be reversed, and in accordance with the stipulation of the parties a decree is to be entered reversing the decision of the board.

*Ordered accordingly.*