## JANET LEIGH *vs.* BOARD OF REGISTRATION IN NURSING.

Suffolk. May 8, 1985. — August 15, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & LYNCH, JJ.

*Board of Registration in Nursing. Nurse. Midwife. Statute,* Construction.
*License. Notice. Constitutional Law,* Equal protection of laws. *Due
Process of Law,* Regulation of economic activity. *Unauthorized Practice
of Medicine. Administrative Law,* Substantial evidence.

Although holding that the Board of Registration in Nursing had the power
under G. L. c. 112, § 61, to discipline, for "gross misconduct" in the
practice of nursing, a registered nurse who engaged in the practice of
midwifery in violation of G. L. c. 112, §§ 80B and 80C, and regulations
thereunder, which prohibit a registered nurse from practicing as midwife
without the board's authorization, this court emphasized that the board
had no other basis for disciplining the plaintiff, as the practice of mid-
wifery by lay persons is, under present statutes, neither within the reg-
ulatory power of the board nor in itself illegal. [675-681]
On an appeal of a decision of the Board of Registration in Nursing suspending
the license of a registered nurse on the ground that her practice of
midwifery without the board's authorization was in violation of G. L.
c. 112, §§ 80B and 80C, and regulations promulgated thereunder, this
court remanded the matter to the board for reconsideration, where the
record of the hearing before the board was not clear whether the nurse's
violation of § 80C and the board's regulations was the sole basis of its
claim of power to discipline the nurse. [681]
On an appeal of a decision of the Board of Registration in Nursing suspend-
ing the license of a registered nurse on the ground that her practice of
midwifery without the board's authorization was in violation of G. L.
c. 112, §§ 80B and 80C, and regulations promulgated thereunder, this
court, in light of its conclusion that § 80C does not prohibit midwives
who are not licensed nurses from attending home births, declined to
consider the nurse's contention that § 80C violates the fundamental right
of a mother to choose where she will give birth, and who will attend her.
[681-682]
The requirement of G. L. c. 112, § 80C, and regulations promulgated there-
under, that prior to practicing midwifery registered nurses must receive
authorization from the Board of Registration in Nursing, and additional
training beyond their nursing training, was rationally related to a legitimate

governmental objective and, thus, infringed no substantive due process rights of a nurse practicing midwifery without such authorization or additional training, who alleged that § 80C deprived her of her right to practice her profession. [682-683]

On appeal of a decision of the Board of Registration in Nursing suspending the license of a registered nurse on the ground that her practice of midwifery without the board's authorization was in violation of G. L. c. 112, §§ 80B and 80C, and regulations promulgated thereunder, this court, in light of its conclusion that § 80C does not prohibit midwives who are not licensed nurses from attending home births, declined to consider the nurse's contention that § 80C is an unconstitutional extension by implication of a criminal statute, in that under § 80C, in conjunction with G. L. c. 112, §§ 6 and 80, any lay person who practices midwifery could be prosecuted for the unauthorized practice of nursing or medicine. [683]

There was no merit to the contention of a plaintiff, whose license to practice as a registered nurse had been suspended after a hearing before the Board of Registration in Nursing, that she had not received adequate notice of the scope of her hearing in the board's show cause order. [684]

At a hearing before the Board of Registration in Nursing, after which the board decided to suspend the plaintiff's license on the ground that her practice of midwifery without its authorization was in violation of G. L. c. 112, §§ 80B and 80C, and its regulations promulgated thereunder, and constituted gross misconduct in the practice of nursing, substantial evidence supported the board's findings that the plaintiff "informs [midwifery] clients of her status as a registered nurse," and that the plaintiff "attends . . . spontaneous birth[s]"; however, the latter finding would not warrant the board in concluding that the plaintiff engaged in the unauthorized practice of medicine. [684-685]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 23, 1984.

The case was heard by *Wilkins, J.*, and was reserved and reported by him after further proceedings before the Board of Registration in Nursing.

*Peter A. Belmonte* for the plaintiff.

*Carolyn V. Wood,* Assistant Attorney General, for Board of Registration in Nursing.

*Patricia M. Fron,* for The Massachusetts Friends of Midwives, amicus curiae, submitted a brief.

*Sandra C. Quinn,* for Massachusetts Midwives Alliance, amicus curiae, submitted a brief.

*Andrew M. Osborne, & Linda Irenegreene* of New Jersey, for Midwives Alliance of North America, amicus curiae, submitted a brief.

LIACOS, J. The Board of Registration in Nursing (board), after a hearing, suspended Janet Leigh's license to practice as a registered nurse. G. L. c. 112, § 61 (1984 ed.). Leigh sought review of the board's decision before a single justice of this court. G. L. c. 112, § 64 (1984 ed.). See *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 129 (1985), and cases cited. The single justice vacated the board's decision and remanded the case to the board for further consideration. On reconsideration, the board "sustain[ed] its earlier decision to suspend Janet Leigh's license, on the grounds that Janet Leigh's practice of midwifery without [the] Board's authorization is in violation of G. L. c. 112, §§ 80B-D and the Board's regulations promulgated thereunder, and constitutes gross misconduct in the practice of nursing."[1] Leigh again sought review of the board's decision before a single justice of this court. The single justice reserved decision and reported the case to the full bench of this court.

Leigh argues, inter alia, that the board was without jurisdiction to suspend her license, that she has been deprived of due process of law under both the Federal and State Constitutions, and that G. L. c. 112, § 80C (1984 ed.), as interpreted by the board, is unconstitutional as violating the guarantees of due process of law and the equal protection of the laws. She also argues that several of the board's findings are not supported by substantial evidence.

The board made sixteen findings of fact, only some of which are relevant to its conclusion that Leigh's unauthorized practice of midwifery constitutes gross misconduct in the practice of nursing. The relevant findings are:

---

[1] In its initial decision, the board concluded that Leigh was guilty of deceit and of two counts of gross misconduct. In its second decision, the board did not renew its conclusion regarding deceit, and it concluded that she was guilty of only one count of gross misconduct.

" 1. Janet Leigh is a registered nurse with a currently valid Massachusetts license in effect continuously since issued on May 1, 1970.

"      . . .

" 8. Since 1977 Janet Leigh has practiced as a professional midwife in the metropolitan Boston area, attending women at home births.

" 9. In contracting to provide her services as a midwife, Janet Leigh informs clients of her status as a registered nurse with obstetrical training.

"10. Janet Leigh attends births in a manner similar to an obstetrician at a spontaneous birth. She provides certain equipment and supplies for home births, including an obstetrical instrument which measures fetal heart beat.

"11. For her services as a midwife, Janet Leigh charges a standard fee which in 1982 was $400.

"12. Janet Leigh attended [a woman] at a homebirth on September 23, 1982, when complications during labor required [the woman] to be taken to the hospital. Janet Leigh accompanied her in the ambulance and gave her history to the admitting physician. [The woman's] physician was Janet Leigh's back up physician for the home birth, but because of the emergency nature of [the] complications, Janet Leigh did not call the back-up physician, but arranged for an ambulance to be called.

"13. By statute and regulation, nurse midwives may not attend births in the home.

"14. Janet Leigh has not applied to the Board for authorization to practice nursing in the expanded role of nurse midwife, and is not certified as a nurse midwife.

"15. Janet Leigh lacks the 'appropriate education,' G. L. c. 112, § 80B and 244 C.M.R. 4.13(1), to be authorized to practice as a nurse midwife.

"16. Janet Leigh is aware of Board regulations governing nurse-midwives, but believes she is not in viola-

tion of such regulations because she interprets them not to apply to her practice as a professional midwife."

The board concluded that Leigh was a registered nurse engaged in the unauthorized practice of midwifery in violation of G. L. c. 112, §§ 80B[2] and 80C,[3] and board regulations codified at 244 Code Mass. Regs. § 4.00 (1980).[4] As a sanc-

---

[2] General Laws c. 112, § 80B (1984 ed.), provides in relevant part: "For the purposes of sections seventy-four to eighty-one C, inclusive: — 'Professional nursing' shall mean the performance for compensation of any of those services in observing and caring for the ill, injured or infirm, in applying counsel and procedures to safeguard life and health, in administering treatment or medication prescribed by a physician [,] dentist, nurse practitioner, or by a physician assistant, or in teaching or supervising others, which are commonly performed by registered nurses and which require specialized knowledge and skill such as are taught and acquired under the established curriculum in a school for nurses duly approved in accordance with this chapter. 'Professional nursing' shall also mean the performance of such additional acts by a nurse with appropriate education as are approved by the board and the board of registration and discipline in medicine in rules and regulations which shall be promulgated and implemented by the board, or which are generally recognized by the nursing and medical professions as proper to be performed by a professional nurse with appropriate education. 'Appropriate education' shall mean successful completion by a nurse of an educational program approved by the board or compliance by the nurse with equivalent competency standards which may be set forth by the board. 'Professional nursing' by a nurse with appropriate education shall not be construed to prevent the performance of additional acts involving evaluation, diagnosis and treatment."

[3] General Laws c. 112, § 80C (1984 ed.), provides in full: "A nurse-midwife who is designated by the board of registration in nursing pursuant to the provisions of section eighty B may engage in the practice of midwifery; provided, however, that the nurse-midwife functions as a member of a health care team which includes a qualified physician licensed to practice medicine in the commonwealth; and provided further, that deliveries by a nurse-midwife take place in facilities licensed by the department of public health for the operation of maternity and newborn services, or in a birth center so licensed. For the purposes of this section a birth center is a licensed clinic, as defined in section fifty-two of chapter one hundred and eleven, or a facility operating under a hospital license issued by the department of public health, which clinic or facility provides prenatal and birth services."

[4] Title 244 Code Mass. Regs. § 4.11 describes nurses practicing in "an expanded role." A "Nurse Midwife" is one of the categories included. 244 Code Mass. Regs. § 4.12 (1) prohibits any person from practicing as a nurse

tion, the board, on remand from the single justice, suspended her license for one year and stated that after one year it would consider reinstatement of her license if she appears before the board and represents that "she is no longer in violation of Board regulations governing the practice of midwifery."[5]

1. *The board's authority to suspend Leigh's license.* General Laws c. 112, § 61, empowers the board to "suspend, revoke or cancel any certificate, registration, license or authority issued by it, if it appears to the board that the holder of such certificate, registration, license or authority, is insane, or is guilty of deceit, malpractice, gross misconduct in the practice of his profession, or of any offence against the laws of the commonwealth relating thereto." The board decided that Leigh was guilty of gross misconduct in the practice of nursing on the basis of its conclusion that she violated G. L. c. 112, §§ 80B and 80C, and regulations thereunder. The term "gross misconduct" has been interpreted broadly. Compare *Forziati*

---

in an expanded role without first obtaining the board's "authorization to do so in accordance with [the] regulations." The requirements for registered nurses seeking to qualify as "Nurse Midwife" are set forth in 244 Code Mass. Regs. § 4.13 (1) as follows: "(1) *Nurse Midwife*: (a) The following requirements apply to persons seeking authorization to practice as a nurse midwife except as they are varied in 244 CMR 4.13(1)(b). 1. Satisfactory completion of a formal educational program which has as its objective the preparation of nurses to perform as nurse midwives and which the Board has recognized as such; and 2. Current certification by a nationally recognized accrediting body approved by the Board for nurse midwives. A person who has completed the educational requirements prescribed in 244 CMR 4.13(1)(a) may practice in an expanded role as a nurse midwife without first submitting evidence of her [or his] certification until the announcement of the results to the Board of the first examination given for certification for which she [or he] is eligible. Should a person fail to take or fail to pass such an examination, she [or he] shall immediately cease practicing in an expanded role as a nurse midwife. Upon passing such an examination, a registrant seeking authorization to practice as a nurse midwife shall promptly inform the Board in writing of this fact."

[5] The board gave Leigh credit for the time her license was suspended under the board's initial decision. There were only four months left of the one-year suspension when the board issued its decision after remand. Those four months expired in April 19, 1985. In light of the position of the parties, we assume that Leigh has not been reinstated.

v. *Board of Registration in Medicine,* 333 Mass. 125 (1955), with *Camoscio* v. *Board of Registration in Podiatry,* 385 Mass. 1002 (1982).

Leigh argues that her acts did not constitute gross misconduct in the practice of nursing. She makes essentially two separate arguments to support this claim. The first is that she was engaged in the practice of "lay midwifery," which is outside the practice of nursing. The second is that she was not engaged in the unauthorized practice of medicine. Leigh's arguments fail to rebut the board's central conclusion: that she violated G. L. c. 112, §§ 80B and 80C, and the regulations promulgated thereunder at 244 Code Mass. Regs. § 4.00, which regulate the conduct of nurses acting as midwives.

In 1975 the Legislature amended G. L. c. 112, § 80B, to expand the definition of "[p]rofessional nursing" to include "the performance of such additional acts by a nurse with appropriate education as are approved by the board [of registration in nursing] and the board of registration and discipline in medicine in rules and regulations which shall be promulgated and implemented by the board, or which are generally recognized by the nursing and medical professions as proper to be performed by a professional nurse with appropriate education." St. 1975, c. 846, § 2. In 1977 the Legislature amended G. L. c. 112, by adding § 80C in a statute entitled "An Act providing for the practice of nurse-midwifery." St. 1977, c. 129. General Laws c. 112, § 80C, provides that "[a] nurse-midwife who is designated by the board of registration in nursing pursuant to the provisions of section eighty B may engage in the practice of midwifery" and requires that such nurse midwives function as part of a health care team that includes a licensed physician and that the deliveries they attend take place in licensed facilities. See note 3, *supra,* for the full text of G. L. c. 112, § 80C. General Laws c. 112, § 80D, created an advisory committee of nurse midwives to be "consulted on matters relating to the practice of nurse-midwifery" and to prepare an annual report for the board concerning "current functions, standards of practice and qualifications in the practice of nurse-midwifery."

In 1980, the board, acting under the authority of G. L. c. 112, § 80B, and G. L. c. 30A, § 2 (1984 ed.), see 244 Code Mass. Regs. § 4.01, promulgated a set of regulations entitled "Massachusetts Regulations Governing the Practice of Nursing in the Expanded Role." 244 Code Mass. Regs. § 4.00. The purpose of these regulations was "to establish the conditions under which nurses registered with the Board of Registration in Nursing may practice in an expanded role." 244 Code Mass. Regs. § 4.02. The regulations "govern the education and practice requirements applicable to nurses practicing in the expanded role." 244 Code Mass. Regs. § 4.04. A "[n]urse practicing in the or [*sic*] an expanded role" is defined as "a nurse with active, current registration as a registered nurse in the Commonwealth who possesses, in addition to generic nursing skills, additional knowledge and skills acquired through appropriate education and clinical experience or their equivalent . . . which enables her to practice in the expanded role." 244 Code Mass. Regs. § 4.05 (7). One such "expanded role" is that of a "Nurse Midwife." 244 Code Mass. Regs. § 4.11 (1). "The requirements governing authorization as a nurse practicing in an expanded role consist of active registration as a registered nurse in the Commonwealth and compliance . . . with the following requirements." 244 Code Mass. Regs. § 4.13. The requirements of the regulation for certification as a nurse midwife are set forth in § 4.13 (1) (a), quoted in note 4, *supra*.

The board found, and Leigh admitted, that Leigh is a registered nurse and that she practiced as a "professional midwife." As a professional midwife, she assisted at home births. In so doing she violated G. L. c. 112, § 80C, and the board's regulations. The regulations flatly prohibit a nurse from practicing in an expanded role without the board's authorization under the regulations. 244 Code Mass. Regs. § 4.12 (1). By being a registered nurse and practicing as a midwife without board authorization to practice as a nurse in the expanded role of nurse midwife, Leigh has violated this prohibition. In so doing, she also violated G. L. c. 112, § 80C.

Leigh argues strenuously, and is joined by amici curiae[6] in her argument, that she did not violate the board regulations pertaining to nurse-midwifery because she was not practicing "nurse-midwifery." Rather, she argues, she was practicing "lay-midwifery," which she claims is separate and distinct from nurse-midwifery. Her argument ignores the clear language of both the statute and the regulations, which does not distinguish between lay-midwifery and nurse-midwifery with regard to registered nurses. "The statutory language, when clear and unambiguous, must be given its ordinary meaning. . . . [T]he statutory language is the principal source of insight into legislative purpose." *Bronstein* v. *Prudential Ins. Co. of Am.*, 390 Mass. 701, 704 (1984). General Laws c. 112, § 80C, states simply that a "nurse-midwife . . . may engage in the practice of *midwifery*" (emphasis added). Title 244 Code Mass. Regs. § 4.24 (1) mandates requirements for "[g]uidelines authorizing a *nurse* to practice *midwifery*" (emphasis added). Thus, apparently, the Legislature, and the board acting under authority granted by the Legislature, did not intend to distinguish between the practice of nurse-midwifery and the practice of lay-midwifery. The Legislature and the board simply stated that nurses may not engage in the practice of midwifery unless they meet certain qualifications and are certified. Leigh, a registered nurse, engaged in the practice of midwifery without certification. Thus, she violated the statute and the regulations.

We do not conclude that Leigh violated G. L. c. 112, § 80C, and 244 Code Mass. Regs. § 4.00 by virtue of her practice of midwifery alone. The board's decision contains some statements which could be interpreted to mean that it disciplined Leigh on the basis that the practice of midwifery, itself, was an offense warranting discipline.[7] Moreover, the board's brief

---

[6] We acknowledge the amici briefs filed by The Massachusetts Friends of Midwives, Massachusetts Midwives Alliance, and Midwives Alliance of North America.

[7] The board's decision twice states simply that Leigh's "unauthorized practice of midwifery constitutes gross misconduct in the practice of nursing." The board's decision also states that her practice of midwifery violated "G. L. c. 112, §§ 80B-C and Board regulations."

before this court takes this position with some force.[8] Leigh counters this argument of the board by arguing that the practice of midwifery does not constitute the unauthorized practice of medicine. While the question whether the practice of midwifery constitutes the unauthorized practice of medicine is not before us, we think it appropriate to comment briefly on the question, in light of the position of the parties.

There is no statutory prohibition against the practice of midwifery by lay persons. The Legislature has not regulated midwifery by persons other than nurses.[9] Nor do we interpret our case law to prohibit the practice of midwifery as the unauthorized practice of medicine. In *Commonwealth* v. *Porn,* 196 Mass. 326 (1907), this court upheld the conviction of a midwife

---

[8] The board states the following in its brief to this court: "The Board determined that the Legislature, in enacting G. L. c. 112, § 80B, 80C did so in the historical context that the practice of midwifery constituted the practice of medicine and thus required authorization. See *Commonwealth* v. *Porn* [, 196 Mass. 326 (1907)] and *Sachs* v. *Board of Registration in Medicine,* [300 Mass. 426 (1938)].

". . .

"If there was any doubt whether Massachusetts permits the unregulated practice of midwifery, the Legislature removed that doubt when it enacted G. L. c. 112, § 80C: the practice of midwifery requires authorization. The Legislature provided that authorization to certain nurses with appropriate education, but did not go so far as to permit even nurse midwives to attend home births." (Footnotes omitted.)

The board, however, abandoned this position at one point during oral argument, resting its position solely on its authority to regulate nurses licensed by it in accordance with the statute and the board's regulations.

[9] We do not agree with the board's argument that the Legislature intended to prohibit the practice of midwifery by all persons when it authorized nurses to practice midwifery in certain circumstances in G. L. c. 112, § 80C. See note 3, *supra*. Section 80C simply provides that a "nurse-mid-wife," so designated by the board, may "engage in the practice of midwifery" under certain conditions. Section 80C is contained in that part of c. 112 entitled, "Registration of Nurses"; c. 112 is itself entitled. "Registration of Certain Professions and Occupations." By § 80C's own clear terms and by its location in the codification of the General Laws, it is clear that in enacting § 80C the Legislature intended to regulate the practice of midwifery by *nurses*. There is no indication in the language of the statute that the Legislature intended to regulate the practice of midwifery by persons who are not nurses, or to grant the Board of Registration in Nursing jurisdiction over the practice of midwifery by persons other than nurses.

for the unauthorized practice of medicine.[10] However, the basis of her conviction was not her practice of midwifery per se but the fact that she used "the usual obstetrical instruments, which she used rarely on occasions of emergency, but never if a physician could be called in time" and "six printed prescriptions or formulas in treating her patients." *Id.* at 327.[11] This court stated: "[W]hen, *in addition to ordinary assistance in the normal cases of childbirth,* there is the occasional use of obstetrical instruments, and a habit of prescribing for the conditions described in the printed formulas which the defendant carried, such a course of conduct constitutes a practice of medicine in one of its branches" (emphasis supplied). *Id.* Thus, "ordinary assistance in the normal cases of childbirth," which we interpret to mean the practice of midwifery, would not be considered the practice of medicine.[12] Cf. *Higgins* v. *McCabe,* 126 Mass.

---

[10] The unauthorized practice of medicine is punishable as a crime. See G. L. c. 112, § 6 (1984 ed.) (providing for the punishment of one engaged in the unauthorized practice of medicine by a fine or imprisonment). See *Commonwealth* v. *Dragon,* 239 Mass. 549 (1921); *Commonwealth* v. *Houtenbrink,* 235 Mass. 320 (1920); and *Commonwealth* v. *Jewelle,* 119 Mass. 558 (1908) (prosecutions by district attorneys for crimes of unauthorized practice of medicine). Cf. G. L. c. 112, § 80 (1984 ed.) (providing for the punishment of one who engages in the unauthorized practice of nursing by a fine); and *Walden* v. *Board of Registration in Nursing, ante* 263, 264 (1985) (unauthorized practice of nursing is a crime).

[11] We hold, *infra* at 684-685, that the part of the finding which states that Leigh used certain "equipment and supplies" (other than an instrument which measures fetal heartbeat) is unsupported by substantial evidence. We hold, therefore, that these unsupported findings do not support a conclusion that Leigh was engaged in the practice of medicine.

[12] *Commonwealth* v. *Porn, supra,* contains some statements which could be interpreted to mean that the practice of midwifery is itself the practice of medicine: "Both medical and popular lexicographers define midwife as a female obstetrician, and midwifery as the practice of obstetrics. . . . [O]bstetrics is a branch of the practice of medicine." *Id.* at 327. Despite these broad statements, the holding of the case is confined to its facts. Thus we interpret the case to mean that a person who practices midwifery *and* uses obstetrical instruments when a physician is unavailable and who prescribes drugs is engaged in the practice of medicine and can be convicted of the unauthorized practice of medicine, if unlicensed as a physician.

Moreover, given our narrow reading of the holding in *Commonwealth* v. *Porn, supra,* we place no precedential value on cases which, in dicta, have

13, 19 (1878) (judgment for defendant midwife affirmed in tort suit: "there was no evidence that the defendant was unskilful or negligent in the performance of any of the duties with which she was properly chargeable in that capacity [as midwife]").

We conclude that while the board had authority under G. L. c. 112, § 61, to suspend Leigh's license on the basis that her violation of § 80C and board regulations constituted gross misconduct in the practice of nursing, the board had before it no other basis for disciplining Leigh. Since the record is not clear that her violation of § 80C and board regulations was the sole basis for the board's decision, we vacate the board's decision and remand the matter to the board for reconsideration.

2. *The constitutional attack on G. L. c. 112, § 80C.* Leigh makes several constitutional arguments against the validity of G. L. c. 112, § 80C. Most of them are based on the same erroneous premise that was followed by the board, namely, that the board's power to discipline a nurse for the practice of midwifery derives from the board's power to regulate midwifery generally. Since we have rejected this premise, we need only consider some of the arguments made by Leigh. Leigh argues that the statute (1) violates the fundamental right of a mother to choose where she will give birth, and who will attend her; (2) offends due process of law because it lacks a rational basis; and (3) violates the guarantee of the equal protection of the laws. She also argues that the board failed to notify her of the charges against her in violation of her right to due process of law.

a. *The due process challenge on behalf of pregnant women.* Leigh claims that a mother has a fundamental constitutional right "to choose where she will give birth and who will attend her." She argues that this right comes within the right of privacy in matters relating to family life and procreation recognized in *Roe* v. *Wade,* 401 U.S. 113 (1973); *Griswold* v. *Connecticut,* 381 U.S. 479 (1965); and *Skinner* v. *Oklahoma,* 316 U.S. 535

cited *Commonwealth* v. *Porn* for the proposition that midwifery constitutes the unauthorized practice of medicine. See *Sachs* v. *Board of Registration in Medicine,* 300 Mass. 426, 428 (1938).

(1942). She also argues that she has standing to raise the due process rights of the pregnant women with whom she has a professional relationship. See *Eisenstadt* v. *Baird,* 405 U.S. 438, 443-446 (1972); *Griswold* v. *Connecticut, supra* at 481. She argues that G. L. c. 112, § 80C, unconstitutionally infringes on the right of mothers to have home births because it prohibits the practice of midwifery by lay persons and restricts the practice of midwifery by nurses to hospitals or licensed birth centers. As previously stated, we do not agree with the argument that § 80C prohibits midwives who are not licensed nurses from attending home births. See note 9, *supra.* Thus, we do not consider Leigh's argument further.

b. *Leigh's due process challenge.* Leigh's second constitutional argument is that § 80C deprives her of her right to practice her profession. See *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 372 (1979) ("the right to engage in any lawful occupation is an aspect of the liberty and property interests protected by the substantive reach of the due process clause of the Fourteenth Amendment to the United States Constitution and analogous provisions of our State Constitution"). While she concedes that this has not been recognized as a fundamental right, she argues, correctly, that the Federal due process clause requires that a statute must bear "a reasonable relation to a permissible legislative objective," *Pinnick* v. *Cleary,* 360 Mass. 1, 14 (1971), and the State Constitution requires that legislation bear "a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418 (1940). We conclude, however, that § 80C meets these tests, including the stricter test under the State Constitution. See *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 421 (1965).

In assessing a due process challenge to social or economic legislation, "[i]t is not for us to inquire into the expediency or the wisdom of the legislative judgment," *Sperry & Hutchinson Co., supra.* "Our task here is . . . both limited and clear: we must determine whether [§ 80C] represents a valid exercise of

the police power. And we do so by assessing the rationality of the connection between the legislative means adopted in [§ 80C] and those permissible public ends the Legislature may plausibly be said to have been pursuing." *Blue Hills Cemetery, Inc.* v. *Board of Registration In Embalming & Funeral Directing, supra.* The Legislature apparently concluded that nurses needed training beyond their nursing training in order to practice midwifery. There is nothing in this record to establish that this conclusion is without rational basis. Accordingly, we must presume that it is rational for the Legislature to prohibit nurses from practicing midwifery without that additional training.[13] "Those who challenge the constitutionality of such legislation 'carry a heavy burden in seeking to overcome the statute's presumption of constitutionality.'" *Blue Hills Cemetery, Inc., supra* at 371, quoting *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 190 (1978). See *Walden* v. *Board of Registration in Nursing, ante* 263, 271-272 (1985). General Laws c. 112, § 80C, cannot be invalidated on this ground.

c. *Additional constitutional challenges.* Leigh makes two additional constitutional arguments. First, she argues that § 80C "is an [u]nconstitutional [e]xtension by [i]mplication of [a] [c]riminal [s]tatute." Leigh essentially claims that G. L. c. 112, § 80C, in conjunction with G. L. c. 112, §§ 6, 80, could be used to prosecute a lay person who practices midwifery for the unauthorized practice of nursing or medicine. Such a prosecution, she claims, would violate the principle that criminal laws must be construed strictly and must give clear warning of proscribed conduct. See *Commonwealth* v. *Rhodes,* 389 Mass. 641 (1983), and *Commonwealth* v. *Healey,* 17 Mass. App. Ct. 537 (1984). We do not address her argument in view of our discussion at note 9, *supra,* where we state that we do not agree with the argument that G. L. c. 112, § 80C, was intended to prohibit the practice of midwifery by persons other than nurses.

---

[13] Leigh does not argue that § 80C is irrational because it restricts the practice of midwifery by nurse midwives to hospitals or licensed birth centers.

Leigh argues that she did not receive adequate notice of the scope of her hearing in the board's show cause order. We consider this argument to be without merit. The show cause order stated, inter alia, that the hearing would be to determine whether she was guilty of "deceit, malpractice and/or gross misconduct in the practice of [her] profession . . . because of [her] practice as a registered nurse in an expanded role as a nurse-midwife without Board authorization in violation of Board's Rules and Regulations 244 CMR 4.12(1) and 4.13(1) and 4.16." This order provided sufficient notice of what was to be decided by the board.[14]

3. *Substantial evidence.* Leigh argues that four of the board's findings of fact are not supported by substantial evidence. Two of the findings she challenges are not essential to the board's conclusion. We consider only those challenged findings which bear on the board's ultimate conclusion. The findings which bear on the board's decision are numbered 9 and 10. See *supra* at 673. With respect to finding no. 9, that Leigh "informs [midwifery] clients of her status as a registered nurse," the record contains substantial evidence to support this finding. Leigh's clients who testified at the hearing stated that Leigh told them that she was a nurse. We note that some of them stated that this fact came up in conversation or it was in response to a question of theirs; nonetheless, we think that their testimony is substantial evidence for the board's finding.

With respect to finding no. 10, there is substantial evidence in the record to support the finding that Leigh "attends . . . spontaneous birth[s]." There is no substantial evidence to sup-

---

[14] In a reply brief filed after oral argument, Leigh argues that § 80C violates the equal protection guaranties of the Federal and State Constitutions because it discriminates against nurses by prohibiting their attending home births, while permitting midwives who are not nurses to attend home births. This argument is not properly before us because it cannot be raised for the first time in a reply brief. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), and 16 (c), 365 Mass. 860 (1974). See *Kelley* v. *Rossi, ante* 659, 665 n.6 (1985), and cases cited.

Similarly, the claim that G. L. c. 112, § 80C, violates Federal and State antitrust law as an illegal restraint of trade is not before us, as it was raised in the reply brief.

port the additional statement in finding no. 10 that Leigh, by using "certain equipment and supplies for home births," in addition to the instrument which measures fetal heartbeat, acted as an obstetrician. While there was evidence of the use of oxygen and a blood pressure cuff, there was no other testimony to the effect that Leigh engaged in the practice of medicine. To the extent that finding no. 10 is supported by substantial evidence, it would not warrant the board in concluding that Leigh engaged in the unauthorized practice of medicine.

4. *Conclusion.* We hold that the board had the power to discipline Leigh on the basis that she violated G. L. c. 112, § 80C, and board regulations at 244 Code Mass. Regs. § 4.00. The board could conclude that such violation constituted gross misconduct in the practice of nursing. G. L. c. 112, § 61. The board was not warranted on this record in disciplining her on any other basis; the mere practice of midwifery itself is not ground for discipline. Leigh has not demonstrated that § 80C violates the constitutional requirements of due process. Since the board has shifted ground in the course of these proceedings as to the basis of its claim of power to discipline Leigh, and it is possible that the board determined its sanction on the theory that midwifery itself is illegal, we set aside its decision and remand the matter to the board for reconsideration in light of this opinion.

*So ordered.*